117 So.2d 512 (1960)
STATE ROAD DEPARTMENT OF FLORIDA, an Agency of the State of Florida, Appellant,
v.
SOUTHLAND, INC., et al., Appellees.
No. B-190.
District Court of Appeal of Florida. First District.
January 21, 1960.
Rehearing Denied February 8, 1960.
*513 Clyde G. Trammell, Jr., Tallahassee, for appellant.
Jones & Foerster, Jacksonville, for appellees.
WIGGINTON, Chief Judge.
The State Road Department seeks to acquire by eminent domain the fee simple title to a parcel of land owned by defendant, together with a drainage easement across part of defendant's property, all of which lies within a platted subdivision presently in the process of improvement and development by defendant. The petition for condemnation is in the usual form and contains those allegations necessary to show petitioner's right to the relief requested. The rights-of-way sought to be condemned are for use in connection with the construction and maintenance of a limited access state highway, designated as State Road No. 9 in Duval County.
In addition, the petitioner filed a declaration of taking, declaring that the lands described in the petition are taken for the use of petitioner, in accordance with the provisions of F.S. Chapter 74, F.S.A.
Defendant Southland, Inc., filed a motion to dismiss the petition, its answer and a claim as permitted by statute in which it asserted that no public necessity, purpose or use exists at the present time for the acquisition of the lands described in the petition, and therefore the institution and maintenance of this proceeding constitutes an improper exercise of the power of eminent domain by the Road Department.[1]
*514 A hearing was held before the court on defendant's challenge to petitioner's proper exercise of the authority conferred upon it by law to institute and maintain this suit. To facilitate the disposition of this issue the parties entered into and filed in the cause a stipulation by which the pertinent facts relative to the issue on trial were agreed upon. After hearing, and upon consideration of the pleadings and the stipulation of facts agreed to by the parties, the trial court entered an order dismissing the cause.
An examination of the petition reveals that the property of defendant sought to be acquired in this proceeding is for use as a right-of-way in the proposed construction of a limited access state highway which will form an integral part of the federal interstate highway system. Among other things it is agreed by the stipulation of the parties that prior to the institution of the cause petitioner acquired by purchase fee simple title to nine lots adjacent to the property now sought to be condemned at a cost of one hundred twenty thousand dollars, which lots were acquired for use as a part of the right-of-way for the proposed limited access state highway; that no public use of the property theretofore acquired by the petitioner was planned for at least two years; that no part of proposed State Road 9, of which the land sought to be condemned will form a part, is now in being or in the course of construction; that the time or date of commencement of construction of said State Road 9 within the area comprising defendant's property is not now known, or fixed or determinable; that petitioner seeks to acquire the lands of defendant as described in the petition before defendant shall have the opportunity of completing its improvement and development thereof by the construction thereon of twenty-eight residences, the visible construction of which had commenced at the time the suit was instituted; that the right-of-way owned by defendant will not be put to any public use until such time as State Road 9 may be constructed thereon; that as of the date of the institution of the suit the State Road Department had not allocated public funds for the construction of State Road 9 within the area comprising defendant's property, nor had the Department, at the time of the execution of the stipulation, prepared nor did it have in its possession engineering plans, construction drawings and specifications detailing and depicting the manner and method by which the section of State Road 9 traversing defendant's property will be constructed.
In its order of dismissal the trial court found from the agreed facts hereinabove outlined that no public necessity, purpose or use exists in this case at this time to properly authorize the petitioner, State Road Department, to exercise the power of eminent domain against the lands of defendant, Southland, Inc. It was upon this finding that the case was dismissed.
The resolutions adopted by the Road Department, copies of which are attached to the petition, declare that the construction of State Road 9 as a limited access state highway is necessary, practical and to the best interest of the State, and that it is necessary that the right-of-way for the roadbed and ditches as described in the petition be acquired for use in the construction and maintenance of such highway under the authority granted by law. The foregoing resolutions constitute an administrative determination as to the necessity of acquiring defendant's land for highway purposes under the power of eminent domain. Such determination of necessity, although presumptively valid, is nevertheless a proper subject of judicial inquiry when timely raised by one who conceives himself to be injured as a consequence thereof.[2]
The abuse of power by misguided, though well intentioned, administrative bureaus, *515 boards, departments or agencies of government poses an ever present threat to the very foundation of our democratic institutions. Though such abuses occur infrequently, their occurrence has a devastating effect upon the rights of individual citizens adversely affected thereby. Thus the courts must be ever zealous in protecting the basic rights of the governed against the improper exercise of governmental power perpetrated under the cloak of lawful sanction.
It is settled in this jurisdiction that a determination of the necessity for acquiring private property under the power of eminent domain by an administrative agency of government, or by a quasi public corporation, will not be set aside by the courts in the absence of a showing that such a determination was motivated by bad faith, fraud, or constitutes a gross abuse of discretion.[3] There is nothing in the record before us to indicate, nor does appellee contend, that the Road Department's resolutions determining the necessity for acquiring defendant's property were motivated by fraud or bad faith. The trial court found that no public necessity, purpose or use exists in this case at this time to properly authorize the Road Department to exercise the power of eminent domain against the lands of defendant. Having so found, it seems implicit in the order appealed from that the court concluded the resolution of necessity adopted by the Road Department constituted a gross abuse of discretion, or else no public purpose or use exists for the taking of defendant's land, and therefore the institution of this proceeding is an improper exercise of the power of eminent domain delegated to it by law.
The question presented for our determination is whether the admitted facts contained in the stipulation of the parties justified the trial court's conclusion that no public necessity, purpose or use exists at this time to properly authorize the Road Department to exercise the power of eminent domain against the lands of defendant. The answer to this question will depend upon the status of the law as it relates to the Department's authority to acquire rights-of-way for limited access interstate highways in advance of the time that funds have been allocated for construction purposes; before detailed engineering plans, construction drawings and specifications for the construction of such highways have been completed and adopted; and before the Department is in position to state with certainty when construction of such highways will be commenced.
It is not disputed but that the right-of-way sought to be acquired in this proceeding is intended for use in the construction of State Road 9 in Duval County, which road will be a limited access facility forming an integral part of the interstate highway system. The construction of an interstate highway system is authorized under the Federal Aid Highway Act of 1956, 70 U.S.Stat. 374. The roadbuilding program authorized by the mentioned Act of Congress contemplates the construction and completion of a 41,000-mile national system of interstate and defense highways within a period of thirteen years, more than one thousand miles of which is scheduled for construction in Florida. The major portion of the cost of this highway system will be borne by the national government, but the benefits from it will inure in ample measure to the citizens of the states in which the highways are constructed. The Federal Aid Highway Act, as amended in 1958, authorizes the advance acquisition of rights-of-way on the interstate highway system, and makes available to the respective states funds to be used for this purpose in anticipation of future construction. Under the provisions of this act the states must agree that the highways for which federal funds are advanced for use in connection with the acquisition of right-of-way will be constructed within a five-year period *516 following the fiscal year after such request is made.[4]
The Florida Highway Code adopted in 1955 authorizes the Road Department to acquire by eminent domain rights-of-way and drainage ditches for existing, proposed or anticipated roads in the state highway system.[5]
With respect to the acquisition of lands for limited access facilities, the statute provides that the Department may in its discretion acquire an entire lot, block or tract of land, if by so doing, the interest of the public will be best served, even though said entire lot, block or tract is not immediately needed for right-of-way purposes.[6]
The Florida Highway Code authorizes the Road Department to select, in cooperation with state highway departments of adjoining states, the route of the national system of highways, and authorizes the Department to make necessary rules and regulations to enable and assure expeditious planning and construction of the federal interstate system of highways and to take full advantage of the Federal Aid Highway Act of 1956 and amendments thereto.[7]
From the foregoing statutory provisions it clearly appears that the legislature of this state has decided as a matter of public policy that it is to the best interest of the people of Florida that our highway department cooperate fully with the Federal Government in the construction and completion of the proposed interstate highway system. The legislation of both the federal and state governments contemplates a long range program of highway construction to extend over a period of thirteen years commencing in 1956. The Federal Government has made available to this State funds for the acquisition of rights-of-way for highways forming a part of the interstate system to be presently constructed, as well as for those to be constructed in the future. The Road Department is specifically authorized to acquire property for use of rights-of-way in the construction of our highway system, even though such property so acquired is not immediately needed for right-of-way purposes.
This court takes judicial notice of the fact that funds for the construction of the interstate highway system are budgeted, received and expended on an annual basis. Roads to be constructed in any given year are selected on a priority basis, dependent upon demonstrated need and the completion status of engineering plans, construction drawings and specifications. Long range planning of a coordinated system of interstate highways has been recognized as an economic necessity by the legislature in the adoption of the highway code, and the duty of intelligently formulating and putting into effect such long range plans has been specifically delegated to the Road Department. The lack of funds in any given fiscal year to commence immediate construction of a segment of the interstate highway system which has been surveyed, located and duly designated, should not be a bar to the Department's authority to acquire by eminent domain the rights-of-way necessary for such highways, even though for financial reasons construction must necessarily be deferred to a future date within the time limits of the overall interstate highway program.
*517 It is not only economically advisable, but good sound judgment, to acquire adequate rights-of-way for highway purposes at a time when land values will not be influenced by the immediate announcement of actual highway construction.[8] Acquisition of rights-of-way for the interstate highway system in advance of the date on which the Department is prepared to commence construction cannot unjustly injure, but in most instances will benefit, the landowner. By knowing exactly the location of the right-of-way, he is then in position to intelligently and economically plan the use and development of his remaining property in relation to the highway as it will be ultimately constructed.
We find nothing in the statutory law of this state which requires that the Road Department have money on hand, plans and specifications prepared and all other preparations necessary for immediate construction before it is lawfully authorized to determine the necessity for taking by eminent domain private property for a public purpose. A contrary conclusion was reached by the Supreme Court in the Carlor case in which the view was expressed that it was the duty of public officials to build and plan not only for the present but for the foreseeable future. The principle was stated that the hands of public officials should not be tied to the immediate necessities of the present, but in making public improvements they should be permitted within reasonable limitations to contemplate and plan for the future.[9]
Even though the admitted facts show without question that the Road Department is not in a position to immediately move forward with the construction of State Road 9 in Duval County, it does affirmatively appear that substantial expenditures have already been made in the acquisition of rights-of-way for this limited access facility. It would do violence to the Department's intention thus manifested to assume that defendant's property sought to be acquired in this proceeding will not be devoted to public use within the time limited for the completion of the interstate highway system. We perceive nothing in the actions of the Road Department, as revealed by the record before us, to justify the conclusion that its resolution of necessity for the taking of defendant's property constitutes a gross abuse of discretion to such a degree as would amount to an improper exercise of its power to acquire the lands of defendant by the power of eminent domain. Nor can it be said as a matter of law that no public purpose or use exists for the taking of defendant's property for the purposes alleged in the petition.
Appellee seriously contends that the trial court's order of dismissal should be sustained for the additional reason that if defendant is forced to immediate trial in this proceeding, it will be unjustly prejudiced in properly proving the damages to which it is entitled under the law. Appellee points to the agreed facts by which the Road Department admits that it does not yet have completed engineering plans, construction drawings or specifications detailing and depicting the manner which the road will be ultimately constructed on the right of way now sought to be acquired. The proposed right-of-way will pass through a platted subdivision substantially owned by defendant which is now in the process of improvement and development. Under the law, defendant is entitled to recover as part of the just compensation to which it is entitled such resulting damages as it may suffer to the remaining lands owned by it through which the right-of-way passes. The appellee argues with considerable logic that since it will not be known prior to or during the trial the grade at which the proposed highway will cross its property, the full extent of the resulting damages which it will suffer is not now *518 known, and will not be capable of proof on trial.
If the proposed highway were of a conventional type which, after construction, would permit free access from abutting property, appellee's point might be well taken. Such objection, however, loses its vitality in view of the fact that the proposed highway to be built on the right-of-way sought to be condemned is a limited access facility which abutting property owners may enter only at designated and widely separated points. It therefore appears that defendant's remaining property which will abut the right-of-way of the highway when finally constructed will not be affected by the grade thereof since access to the new highway from such abutting property will not be permitted. The petition for condemnation clearly reveals that the property sought to be condemned thereby is the fee simple title to the lands described in the petition, together with the rights, if any, of access, air, view and light between each of the parcels of land designnated as "limited access" and said State Road 9. The jury, under appropriate instructions of the court, will be directed to award defendant such damages as the proof may show it to be entitled for the loss of its land and the appurtenant rights for which compensation is payable. The rule of evidence which will be applicable on the trial of this cause may be properly settled by the court in pre-trial proceedings sufficiently in advance of the trial as to enable defendant to marshal such competent proof as may be required by it to establish the maximum damages it will suffer to its remaining property.
By cross-assignment of error appellee contends that the trial court erred in denying its motion to dismiss the complaint. It is appellee's position that in its resolution of necessity for the taking of defendant's land the Road Department did not describe with any degree of definiteness or certainty the lands to be acquired in this proceeding. It is appellee's position that the determination as to the amount of land required for the right-of-way rests exclusively with the Road Department, which determination cannot be delegated to its subordinate engineers or attorneys. Appellee asserts that such determination was not properly made in this case, and therefore the resolution which forms the basis for this action is a nullity.
The resolution in question recites that the State Highway Engineer has had a part of State Road 9 in Duval County located and surveyed, has designated the same as Section 7228, and has prepared a map of survey and location of that portion of said section extending from the St. Johns County line to Atlantic Boulevard in Jacksonville. The resolution contains no specific description of the right-of-way to be acquired, but it does approve the location and survey of the portion of said section as shown on said map, and directs that a copy of the map certified by the director and attested by the secretary be filed in the office of the Clerk of the Circuit Court of Duval County.
The foregoing resolution is not subject to the fatal defects asserted by appellee if the map of survey referred to therein and adopted by reference is sufficient to accurately describe the full extent of the right-of-way owned by defendant and sought to be condemned in the suit.
The stipulation of facts agreed to by the parties recites that the survey referred to in the resolution abovementioned, copy of which was filed with the petition of condemnation, is the same survey, a print of which was filed in the cause upon the institution thereof, and among the public records of Duval County, Florida, on January 20, 1959.
Reference to the plat attached to the petition for condemnation reveals that it was filed in the office of the Clerk of the Circuit Court of Duval County on January 15, 1959. It is nothing more than a drawing showing the centerline of the section *519 of State Road 9 now in question, and does not outline the boundaries of the right-of-way sought to be acquired, nor does it give sufficient information from which one could identify the property which is described by metes and bounds in the petition. On the other hand, the stipulation of facts also recites that the plat referred to in the Road Department's resolution is the same plat which was filed and recorded in Duval County on January 20, 1959. There is contained in the record on appeal such a plat bearing the file mark identified in the stipulation of facts as having been filed with the Clerk of the Circuit Court of Duval County on January 20, 1959. This plat is a right-of-way map certified to by the directors and secretary of the Department, and fully outlines the location and boundaries of the right-of-way of the section of State Road 9 referred to in the petition. It contains sufficient metes and bounds description from which defendant's property can be readily identified. The record does not reveal which of the plats mentioned herein was considered by the trial court in reaching his conclusion that defendant's motion to dismiss the complaint should be denied. If we consider the centerline plat attached to the petition for condemnation as being the one which was ratified and approved by the Road Department and referred to in its resolution of necessity and taking, we would be forced to agree with appellee that the description of the right-of-way shown thereon is entirely inadequate, and would not form a proper basis for the resolution as a determination of the land found to be necessary for right-of-way purposes. If, however, the right-of-way map referred to in the stipulation of facts which was filed for record in Duval County on January 20, 1959, is the map referred to in the Road Department's resolution of necessity and taking, we would be forced to conclude that the resolution was sufficient, and that the trial court committed no error in denying appellee's motion to dismiss the petition. Since appellee has failed to make it clearly appear that the trial court committed error in denying its motion to dismiss the petition, the order in this respect must be affirmed.
For the foregoing reasons the order appealed from is reversed and this cause remanded for further proceedings consistent with the views herein expressed.
Reversed.
STURGIS and CARROLL, DONALD K., JJ., concur.
NOTES
[1] F.S. Sec. 74.04, F.S.A.  "Upon the date designated for considering the report of the appraisers all parties to the cause may be heard, represented by counsel and may introduce testimony as to the value of the property sought to be condemned, and said parties shall have the right to introduce testimony and be heard upon the question as to whether or not the petitioner is properly exercising the authority delegated to it in taking the said property."
[2] Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488.
[3] Sibley v. Volusia County, 147 Fla. 256, 2 So.2d 578.
[4] 23 U.S.C.A. § 108.
[5] F.S. Sec. 337.27 F.S.A.  "Rights-of-way acquired by department; eminent domain; procedure; title; cost. (1) The power of eminent domain is vested in the department to condemn all necessary lands and property for the purpose of securing rights-of-way, borrow pits and drainage ditches for existing, proposed or anticipated roads in the state highway system or state park road system. The department shall also have the power to condemn any material and property necessary for such purposes."
[6] F.S. Sec. 338.04, F.S.A.
[7] F.S. Sec. 335.03, F.S.A.
[8] State v. Florida Development Commission, Fla. 1957, 95 So.2d 13.
[9] Carlor Co. v. City of Miami, Fla. 1953, 62 So.2d 897.