RAWLS, Judge.
Appellee Lewis, et al., instituted this inverse condemnation action against the State Road Department, alleging that it has taken part of his land for public use without due process of law and without payment of just compensation. The chancellor of the Circuit Court of Gulf County, Florida, entered a final decree in favor of Lewis, and transferred the cause to the law side of the court for the purpose of a jury determination of the extent of the damages. From this final decree the Road Department has taken this appeal.
These parties have been at loggerheads for many years over the widening of a portion of State Road 30 (U.S. 98) and the construction of an overpass in Port St. Joe, Florida, by the Road Department. We must delve into the history of their dispute in order to reach the points on appeal.
For many years prior to any controversy between these parties, Lewis owned a parcel of business property with a frontage of 300 feet on State Road 30 in Port St. Joe, Florida, and used said property for the operation of a service station, cafe and sales and service of automobiles. The property was improved with a large business building and a concrete apron connecting the front of the building with the paved portion of said highway, which permitted unrestricted access from the Lewis property to the highway prior to the construction of a vehicular overpass in 1956.
The State’s claim to the parcel in controversy is by statutory dedication, there being no conveyances out of Lewis or his predecessors in title for highway right of way. In 1929, State Road 30 was paved to a twenty foot width and as to any right of way within- this boundary there is no dispute. On December 31, 1952, the Road Department completed the widening of State Road 30 to a width of 60 feet. Subsequent to the completion of the 1952 widening project, Lewis utilized the concrete apron in front of his building for servicing automobiles at the gasoline pumps and displayed automobiles by parking same perpendicular to his building on the concrete apron in front of his showroom, a portion of said automobiles protruding into the widened paved portion of the highway. This method of conducting his business continued until 1956.
The catalysis of the parties’ dispute was the announcement in 1953 by the Road Department of plans to construct an overpass over railroad tracks which were immediately west of the Lewis property. The planned elevated approach to this overpass called for a high embankment in front of the Lewis building. Lewis reacted to the news of the overpass by filing an injunction suit in 1953 alleging that the contemplated overpass would constitute an expenditure of public funds to serve the private purposes of St. Joe Paper Company and the Apalachicola Northern Railroad Company, and that the elevated roadway adjoining the Lewis property would deprive Lewis of his view and access. A temporary injunction -issued, from which the Road Department instituted certiorari proceedings to the Supreme Court, which denied same in a four to three decision.[1] This decision will' be referred to as the first Lewis case. Upon remand, the chancellor found that the Road Department’s proposed construction did not constitute an unlawful appropriation of public funds for a private purpose, that there was no malice or abuse of discretion on the part of the Road Department, that the change in grade was a lawful improvement of a public highway, and that Lewis had no right to compensation for damages due to a lawful change in grade since the proposed overpass would not take any of the Lewis property. Lewis appealed and the Supreme Court in the second Lewis case[2] *864 affirmed the chancellor’s final decree. A detail of the facts and issues between the parties will be found in the dissent by Justice Mathews in the first Lewis case and the opinion authored by Associate Justice Rowe in the second Lewis case. During the pendency of the foregoing injunction suit, the Road Department, in order to procure a release from the temporary injunction, filed a suit to condemn Lewis’s rights to light, air, view, and access. This suit was dismissed subsequent to the decision of the Supreme Court in the second Lewis case.
This brings us to the present controversy. On July 16, 1960, Lewis filed this action in the nature of an inverse condemnation suit seeking a decree requiring the Road Department to exercise its right of eminent domain for the purpose of compensating Lewis for the property it took in 1952, the additional property taken during the overpass construction, and damages for infringement of certain rights relative to his remaining property. The Road Department pleaded two affirmative defenses: res judi-cata and acquisition by dedication under Section 337.31, Florida Statutes, F.S.A.
Briefly stated, the testimony of Lewis, corroborated by a number of witnesses, showed in addition to the uncontroverted facts stated above: 1. That the Road Department reconstructed the drop curb in front of his property with a raised curb, and in so doing constructed the new curb on his property closer to his building and in such a manner as to- restrict access to his gasoline pumps. 2. That the access road in front of his property, after completion of the overpass construction, was 16J4 feet in width rather than 18 feet as called for by the plans. 3. That the Road Department constructed a raised pedestrian walkway on his property between his building and the curb, further preventing display of his automobiles and access of vehicular traffic to his remaining property. 4. That the crib wall of the overpass was constructed on a portion of his property, even though the Road Department had previously claimed it would be constructed on its right of way at least 18 feet from his property. The evidence submitted by the Department consisted mainly of testimony that the overpass was built according to the plans. The Department’s engineers, however, did admit that the one-way access street was narrower than the 18 feet shown in the plans, that the street was pretty well torn up during construction, and that they were unable to see any existing curbing in pictures taken during construction.
The chancellor found that the State Road Department without due process of law did on December 31, 1952, appropriate a triangular parcel of Lewis’s property, and that in 1956 in the course of constructing the vehicular overpass which was the subject matter of the previous litigation, appropriated an additional described parcel of the Lewis[3] property. The Road Department now contends that the chancellor was in error because:
1. The decision of the Florida Supreme Court in the second Lewis case is res judi-cata as to all matters involved in the instant case.
2. Assuming arguendo, that the Department took a triangular parcel of the Lewis property in the 1952 widening project, it acquired an easement thereto prior to the institution of this action by dedication under the authority of Section 337.31, F.S., F.S.A., 1961.
3. Lewis failed to prove that the Department took any of his property by reason of the construction of the overpass.
The Road Department advances the principle of res judicata upon the premise *865 that the injunction suit was treated as an inverse condemnation suit, the same as the instant case, and since that case held that none of the Lewis land was to be taken, the issues now being litigated have been previously resolved in favor of the State Road Department. It should be noted that this defense is directed only toward that triangular portion of the Lewis property which the chancellor found was taken in the 1952 road widening project. Not even a judgment in a condemnation suit could have precluded a subsequent claim for injuries caused by new and distinct acts of the Road Department or by any taking of the Lewis land resulting from the construction of the overpass project in a manner different from that contemplated.[4]
Res judicata is an affirmative defense which must be asserted by proving the presence of the following essential factors: 1.Identity of the thing sued for; 2. Identity of the cause of action; 3. Identity of the persons and parties to the action; and 4. Identity of the quality in the person for or against whom the claim is made. The test for determining identity of the thing sued for and identity of the cause of action is the identity of the facts essential to the maintenance of the suit.[5]
Consequently, in order to evaluate the principles of res judicata as same apply to the instant cause, we must review the facts as same existed at the time of the filing of the injunction suit by Lewis in 1953. A review of the original record contained in said injunction suit leads one to the inescapable conclusion that the Road Department being fully informed of Lewis’s vehement objections to the contemplated overpass project, planned to steer around the Lewis property in constructing same, and did not in the planning stage of the contemplated overpass in 1953, this being the time Lewis filed his injunction suit, intend to touch any of the Lewis property. Such conclusion is buttressed by an examination of the original proceedings; pertinent portions thereof being as follows:
1. A copy of a resolution passed by the County Commissioners of Gulf County, Florida on May 26, 1953, was attached to the Lewis complaint in the injunction suit, portions thereof being: “* * * [I]t is now stipulated by the promoters of said overpass that they now, under present plans will slide the overpass over to the west side of U. S. Highway No. 98 several feet, and thereby, in their opinion, eliminate the necessity of the State Road Department having to enter condemnation proceedings on the property of said M. G. Lewis and Sons Garage * * It is significant the plans referred to in said resolution reflected that the 18 feet of State Road 30 abutting the Lewis property (same having been constructed in 1952) would not be disturbed in the construction of the contemplated overpass project. The plans at that time reflected that the boundary of the road right of way abutting the Lewis property consisted of a drop curb along the frontage of the Lewis property which permitted unrestricted access of automotive traffic to and from any part of the Lewis property.
2. A letter dated November 16, 1953, from Road Board Chairman Richard H. Simpson to Acting Governor Charley E. Johns stating: “However, our attorneys advise us that since the construction [of the overpass] does not touch the Lewis property that there, is considerable doubt whether or not the Road Department is responsible to Mr. Lewis.”
3. A letter dated December 7, 1953, from District Engineer G. L. Dickinson to J. L. Sharit, Vice President of the Apalachicola Northern Railroad Company, requesting if the land for the needed additional right of way (on the west side of State Road 30 directly across from the Lewis property) belonged to St. Joe Paper Company and if a conveyance of same would be agreeable.
*866 4. Interrogatories propounded by Lewis on May 17, 1954 to the Department requesting information on the location of the center line of State Road 30 and the location of Lewis’s triangular tract with respect to the plans for construction of the overpass. The Road Department refused to answer the foregoing interrogatories stating that the same were immaterial, irrelevant and not material to the issues of the cause. The trial court sustained the Road Department’s position thereby holding that none of the property owned by Lewis was involved in the injunction case.
Thus, we conclude that in the year 1953 the Road Department by its pleadings affirmatively asserted that it would not take any of the Lewis land; that the triangular parcel was not material to the issues of the cause, and that it did not contemplate disturbing the eastern 18 feet of the existing highway frontage abutting the property.
The special master appointed to take the testimony and proofs in the injunction case reported that the pleadings and testimony “ * * * conclusively show that neither the additional railroad tracts * * * nor the proposed overpass or viaduct would take, or abut upon, any of the land of plaintiffs [Lewis] * * * [but] would be constructed at least eighteen feet from plaintiff’s property * * The chancellor overruled all objections to the report, and it was upon this premise that the Supreme Court rendered the two Lewis decisions.
Having reviewed the facts and issues involved in the two prior Lewis cases, and the facts and issues here presented, we conclude that the issues litigated in the injunction case were limited to the authority of the Road Department to build the overpass and the right of Lewis to consequential damages for loss of access, light, view and air which it was anticipated would result from the change in grade of a part of the Department’s then existing right of way. In the instant cause Lewis is seeking compensation for the actual taking of his land and all damages incident thereto. The act complained of as damaging to Lewis in the injunction case was the change in grade, whereas, the act complained of here is the wrongful taking of property. There is nothing in the prior suit which adjudicated Lewis’s ownership of the triangle nor the question of the Department’s taking such property. As to the taking of the Lewis triangular tract we affirm the chancellor in his finding that the State Road Department failed to sustain its burden of proving res judicata in that it failed to prove identity in the thing sued for and identity in the cause of action. Judgments rendered in actions of this type are generally held to be conclusive only as to items of damages in issue or within the scope of the issues, and the Road Department having pleaded that the location of the Lewis triangle was not material to the issues in the injunction case, is now bound by that pleading and is estopped to plead that they were within the scope of the issues in the previous case.
However, we hold that the Lewis claim in the instant cause for damages due to change in grade such as loss of ingress, egress, air, light and view is res judicata. Since there existed in the two cases a common identity of the injury sued for, the cause of action, the parties, and the quality in the person for whom the claim is made,[6] this issue has been fully litigated as to the conditions which would have existed had the overpass been built according to the plans (as represented by the pleadings) before the courts in the injunction case.
Lewis further contends that the overpass is a limited access facility and as such the Road Department is required under Section 338.04, F.S., F.S.A., to condemn the consequential rights of access, air, view and light. We note that this statute was avail *867 able to Lewis in his injunction suit, it having been passed prior to rendition of the chancellor’s decree. It was incumbent upon Lewis at that time to advance all theories relating to that cause of action and whether he did or not is of no consequence here. One may not litigate a particular cause of action upon a theory of his choosing and after the issue has been resolved against him seize upon a different theory and again litigate the identical cause.[7] We conclude that the able chancellor erred in holding that Lewis could recover damages for deprivation of access along his entire frontage. due to change in grade.
However, the facts herein proven to show construction of the overpass in a manner not contemplated by the courts in the injunction suit — e. g. that the overpass was actually built so that the tip of the Lewis triangle is located in the cribbed wall which rises approximately twenty feet higher than the natural land level, that the raising of the curb on the Lewis property prevented the further use of the pump island, and that the south bound traffic on U.S. 98 may not leave the overpass and turn left directly on the one-way access road to the Lewis property — are factors which, due to the particular type of businesses being operated by Lewis upon the Lewis lands, may be considered in awarding special damages to the extent that these factors have contributed to the injury or destruction of the established businesses of more than five year’s standing.[8]
We next consider the Road Department’s assertion that it has acquired an easement by statutory dedication. Salient provisions of the subject statute[9] are:
“Whenever any road constructed * * * by the department shall have been maintained, kept in repair or worked continuously and uninterruptedly for a period of four years * * * by the department * * * such road shall be deemed to be dedicated to the public to the extent in width which has been actually worked for the period aforesaid, whether the same has ever been formally established as a public highway or not. Such dedication shall be conclusively presumed to vest in the * * * state highway system or state park road system, all right, title, easement and appurtenances therein and thereto, whether there be any record of conveyance, dedication or appropriation to the public use or not.” [Emphasis supplied.]
Thus, by the explicit terms of the statute the burden is placed upon the Road Department to affirmatively prove a construction and the width actually worked continuously and uninterruptedly for the period prescribed. The Road Department’s evidence going toward proof of dedication consisted solely of the dates of the two road construction projects in question, the width of the paved portion of the 19S2 roadway, and the project engineer’s statement that the curb and gutter built in 1952 had not been moved. There was no proof as to where the center of the paved roadway was located following the 1952 construction, no definite date established for the 1952 taking, no evidence of the Department’s continuous maintenance of the roadway for any period of time, and no evidence of the exact amount or the boundaries of the Lewis property which is claimed by the Road Department. Although the project engineer testified that the one-way access road to the Lewis property was “in pretty bad shape” during the overpass construction due to the routing of traffic and heavy road equipment over same, there was no evidence that the same was ever repaired, rebuilt, or otherwise maintained.
*868 Judge Wigginton speaking fox- the majority of this court in Lovey v. Escambia County[10] distinguished between acquisition of an easement by virtue of the dedication statute and acquisition by prescription and adverse use. In analyzing the purpose of the subject statute he stated:
“ * * * that the acquisition of a road easement by dedication is not dependent upon adverse and hostile user as defined in the law of prescription and adverse possession. On the contrary, title by dedication presupposes a use consistent with the dedicators interest not one adverse or hostile to it.
******
“It is equally established in this state that an act of dedication is usually affirmative in nature and need not be done by formal act but may be done by parol, may result from the conduct of the owner or may be manifested by written grant, affirmative acts or the permissive conduct of the dedicator.” [Emphasis supplied.]
It is apparent from the conduct of the alleged dedicator (Lewis) and the Road Department during the year 1953 and subsequent years, that Lewis did not intend to give the Road Department a single grain of sand. The evidence in this cause falls short of the statutory requirement necessary for the conclusive presumption of dedication to the state.
In addition we cannot overlook the inconsistency of the Road Department’s pleadings in claiming in the first Lewis case that it was not taking any of the Lewis property, but claiming herein that it did take the Lewis property in 1952 and the four year prescription period has run. We conclude that the Department by its conduct is estopped from asserting title by virtue of the subject statute. The following quotation from Daniell v. Sherrill[11] is most appropriate to the principle of estop-pel as it applies here:
“It has been aptly said: ‘If we say with Mr. Justice Holmes, “men must turn square comers when they deal with the Government” it is hard to see why the Government should not be held to a like standard of rectangular rectitude when dealing with its citizens.’ ”
The Department’s final point goes to questioning the sufficiency of Lewis’s pi-oof. In this connection, the chancellor had before him Lewis’s pros and the Department’s cons. In addition, documentary evidence in the nature of the Department’s right of way maps was introduced reflecting on the face of same an invasion by the Department of the Lewis property. We find that this point is without merit.
We hold that the chancellor was in error in holding that the overpass project constituted a limited access facility. We further hold that Lewis’s claim for damages for deprivation of access, light, air and view is res judicata to the extent set forth in this opinion. In all other respects we affirm.
STURGIS, C. J., and WIGGINTON, J„ concur.

. State Road Department v. Lewis, 79 So.2d 699 (Fla.1955).

. Lewis v. State Road Department, 95 So.2d 24S (Fla.1957).

. The property the chancellor found was taken in 1952 was the western most portion of the triangular parcel extending to a point three feet west of the curb and gutter as it now exists. The property taken during the overpass construction was an additional portion of the triangle approximately eight and one-half feet in width.

. Poe v. State Road Dept., 127 So.2d 898, 899 (Fla.App.1st, 1961).

. Ibid..

, See Selden v. Jacksonville, 28 Fla. 558, 10 So. 457, 14 L.R.A. 370 (1891); Jacksonville Expressway Authority v. Milford, 115 So.2d 778 (Fla.App.1st, 1959); 12 Fla., Jur., Eminent Domain, § 84.

. Semple v. Semple, 90 Fla. 7, 105 So. 134 (1925).

. Section 73.10, F.S., F.S.A.

. Section 337.31, F.S., F.S.A.

 Lovey v. Escambia County, 141 So.2d 761 (Pla.App.1st, 1962).

. Daniell v. Sherrill, 48 So.2d 736 (Fla.1950).