297 So.2d 323 (1974)
CENTRAL AND SOUTHERN FLORIDA FLOOD CONTROL DISTRICT, Appellant,
v.
WYE RIVER FARMS, INC., et al., Appellees.
No. 72-1065.
District Court of Appeal of Florida, Fourth District.
June 7, 1974.
Rehearings Denied July 31, 1974.
*325 Thomas J. Schwartz, West Palm Beach, for appellant.
S. Lindsey Holland, Jr. of Crofton Holland & Starling, Melbourne, for appellee Wye River Farms, Inc.
Edward M. Jackson, Cocoa, for appellees Gilbert A. Tucker and Ruth M. Tucker.
SHOLTS, T.E., Associate Judge.
This is an appeal from an Order of the Circuit Court of Brevard County, dismissing a Petition for Condemnation with prejudice.
Appellant, Central and Southern Florida Flood Control District sought to acquire a portion of lands from each of the Appellees, Wye River Farms, Inc., Gilbert A. Tucker, and Ruth M. Tucker, for use as a water storage area as part of a federally authorized project for flood control and water conservation in the Upper St. Johns River Basin.
After impanelment of a jury, the case was dismissed with prejudice immediately following testimony of Appellant's first witness, its chief engineer, William V. Storch.
Factually, Appellant's Governing Board had passed Resolution No. 942 authorizing the filing of eminent domain proceedings. Thereafter, on December 30, 1970, the Petition was filed. After a hearing on the necessity for taking, an Order of Taking was entered by the trial court on February 1, 1971, granting fee title to Appellant to each parcel. Several Motions to Dismiss subsequently filed by Appellees had been previously disposed of by the court but, immediately prior to trial, additional Motions were filed alleging that Appellant's project plans were insufficiently precise to support the taking of the land. These Motions remained pending at the impanelling of the jury on September 25, 1972. Nevertheless, a jury was sworn and taken to view the subject property, and the court heard testimony from Appellant's engineer as noted above.
Both parties have quoted liberally from the testimony concerning construction and engineering details of the project. At the conclusion of Mr. Storch's testimony, Appellees renewed their Motions, and the trial court thereupon dismissed the suit with prejudice. The Order of Dismissal was formally entered on October 13, 1972, and was based upon the following:
A. The (Appellant's) project was in a state of uncertainty as to its construction.
B. The project lacked definiteness and finality upon which severance damages might be predicated.
C. The Resolution of Appellant dated September 8, 1972, which delegated authority to William V. Storch, the chief engineer of the Appellant, to make commitments at trial binding upon Appellant was a questionable delegation of authority and further demonstrated that the project was lacking a definite plan.
D. The engineer's testimony indicated that insufficient information was available to prove the necessity of the taking.
The issues involved are:
1. Whether or not it is necessary for a condemning authority to have plans and specifications fully prepared in order to support an eminent domain action.
2. If so, whether or not testimony from Appellant's engineer and exhibits received *326 in evidence comprise sufficient plans, specifications and construction details.
3. Whether Appellant's Resolution No. 1019 was proper standing alone or as a delegation of authority to legally bind Appellant, in court, for the construction of a bridge for each Appellee for the purpose of restoring access to the remainder of their lands.
4. Whether or not the United States is a necessary party to this and similar actions inasmuch as the project is federally authorized and undertaken in conjunction with the U.S. Army Corps of Engineers.
As to the first issue, Appellant argues:
a. That there is no legal requirement for a condemnor to offer in evidence any plans and specifications pertaining to construction of a public project, or
b. That if such a legal requirement were found to exist, the testimony of Appellant's engineer together with the General Design Memorandum and Detailed Design Memorandum presented complete and detailed information as to the plans and specifications of the project.
We believe there is no legal requirement for a condemnor to offer any evidence of plans and specifications but, if offered by any party, such evidence is admissible. We also believe that the testimony of Appellant's engineer as well as the General and Detailed Design Memorandums received in evidence (Petitioner's Exhibits 3 and 4) were complete and detailed enough to pass judicial scrutiny. It has been well established that it is not necessary that a condemnor, representing the state or a political subdivision of the state, have funds on hand, plans and specifications prepared and all other preparations necessary for immediate construction before it can determine the necessity for taking private property for a public use. In point of fact, it is the duty of public officials to look to the future and plan for the future. Carlor Co. Inc. v. City of Miami, Sup.Ct.Fla. 1953, 62 So.2d 897; State Road Department of Florida v. Southland, Inc., 1st D.C.A. 1960, 117 So.2d 512; Wright v. Dade County, 3rd D.C.A. 1968, 216 So.2d 494.
Resolution No. 942 of Appellant's Governing Board constituted an administrative determination as to the necessity of acquiring Appellees' land for the stated purposes of water storage under the power of eminent domain. Such determination, though presumptively valid, is properly subject to judicial inquiry when objection to the "necessity" of taking is properly pled. This rule is necessary to protect landowners from abuses of misguided power. The presumption created by such administrative determination should not be overcome unless it can be shown that the determination was motivated by bad faith, fraud or constitutes a gross abuse of discretion. Sibley v. Volusia County, 1941, 147 Fla. 256, 2 So.2d 578; Staplin v. The Canal Authority, 1st D.C.A. 1968, 208 So.2d 853.
Insufficiency of construction plans and specifications is not and has never been included among the grounds for overturning the necessity of a taking, otherwise properly prosecuted, and we now so hold.
Although Appellees rely heavily on the Southland case, supra, we note that 117 So.2d page 517 of that opinion recites:
"We find nothing in the statutory law of this state which requires that the Road Department have money on hand, plans and specifications prepared and all other preparations necessary for immediate construction before it is lawfully authorized to determine the necessity for taking by eminent domain private property for a public purpose." (Emphasis supplied)
*327 Appellees additionally argue that without complete plans, specifications and construction details in evidence, they will be unjustly prejudiced in proving damages to the remainder. This argument is not well founded because the engineer testified in rather minute detail as to the manner of construction of the particular project and that the documents entitled General and Detailed Design Memorandums (admitted into evidence as Petitioner's Exhibits 3 and 4) constituted the plans for the project.
Upon remand, if no additional plans or specifications, are put in evidence, Appellees will not be prejudiced and will be allowed to assume the worst possible effect upon their remainder by virtue of the taking.
The law takes into consideration all conceivable uses to which the property taken could be put by the condemnor by virtue of the legal title sought or awarded. 5 Nichols, Eminent Domain § 16.1 at page 16-2 states:
"Generally, the damages which may be recovered are based upon all uses to which the property taken may be devoted in the future and which the parties may be said to have contemplated at the time of the taking. The immediate needs or present plans of the condemnor are not necessarily controlling. So long as the taking is sufficient in extent, that use may be considered which would most fully utilize the property taken and inflict the most serious damage."
Of course, plans and specifications for construction of a public project are admissible in evidence by either party. Doty v. City of Jacksonville, Sup.Ct.Fla. 1932, 106 Fla. 1, 142 So. 599. Usually the condemnor possess the greater motive for offering plans and specifications since admission of such evidence provides a positive declaration of the manner in which the property will be utilized, which manner may not damage the remaining property according to the worst possible assumption or inflict the most serious damage the legal title acquired might imply. However, when such information is in evidence, the condemnor is bound thereby and the issues as to damages to the remainder are framed therein. All such damages as are caused by the taking and which are not merely consequential are recoverable.
The pertinent portions of Resolution No. 1019 are as follows:
"NOW, THEREFORE BE IT RESOLVED by the Governing Board of the Central and Southern Florida Flood Control District that the District is committed to the following:
(1) Construction and maintenance of an H-20 loading concrete bridge, 14 feet wide, and suitable access ramps for continuation of access of owners, Tucker and their heirs, successors or assigns, across Levee 72 and its borrow canal.
(2) Construction and maintenance of an H-20 loading concrete bridge, 14 feet wide and suitable access ramps for continuation of access of owner, Wye River Farms, Inc., and its successors or assigns, across Levee 72 and its borrow canal.
(3) Construction or improvement, where necessary, from native material of a 20 foot crown road to elevation 48 feet m.s.l. along the West 70 feet of Section 19, Township 30 South, Range 35 East, and the South 70 feet of Section 18, Township 30 South, Range 35 East, to be for the non-exclusive use of owners Tucker and Wye River Farms, Inc., their heirs, successors or assigns. Maintenance to be performed by said owners until such time as the general public is allowed to use said road, at which time maintenance would be by the District or other agency. Said road in the South 70 feet of Section 18, Township 30 South, Range 35 East to be for the non-exclusive *328 use of the owner, Wye River Farms, Inc., its successors or assigns and would be maintained by said owners until such time as the general public is allowed to use said road, at which time maintenance would be by the District or other agency.
BE IT FURTHER RESOLVED, that William V. Storch, Director of Engineering of Central and Southern Florida Flood Control District is hereby authorized and directed for and on behalf of the Governing Board of Central and Southern Florida Flood Control District to make commitments for the District on details of the matters previously mentioned in this Resolution, and upon such matters as may arise during the court of the trial of the aforementioned pending litigation."
This Resolution makes the intent of Appellant's Governing Board quite clear. There are two separate and distinct thoughts expressed. First, the Governing Board committed itself to construct the bridges to restore the severed access to the remaining lands of Appellees. Second, the Governing Board authorized its chief engineer to speak for it in court as to this commitment.
This document, as well as the engineer's testimony relative to bridges, is evidence strictly offered in mitigation of damages to the remainder. In our view, it is not an attempted amendment to the Petition in Condemnation nor does it alter the quality of title or legal interest of any parcel. In our opinion, it does not allow a revocable, permissive use. Houston Texas Gas & Oil Corp. v. Hoeffner et al., 2d D.C.A. 1961, 132 So.2d 38.
A resolution by the governing authority of a condemning agency is an administrative determination. It determines the necessity for acquisition of real property for a public purpose in support of the Petition in Condemnation as did Resolution No. 942 (Tosohatchee Game Preserve Incorporated v. Central and Southern Florida Flood Control District, Sup.Ct.Fla. 1972, 265 So.2d 681) or it may authorize a positive program of construction of a public project such as the building of bridges in Resolution No. 1019.
Plans and specifications, and indeed any matter in explanation of the way in which the public project is to be constructed, are evidentiary in nature and, as such, may explain the manner in which the property acquired will be utilized.
Appellees argue that the attempt of appellant:
a. To put in evidence Resolution No. 1019 and
b. To delegate authority to its engineer
is statement of permissive policy which later may be withdrawn and is in contravention of the rule set forth in Houston, supra. We disagree.
Appellees' argument overlooks the distinction between an attempt at limiting the effect of the title or legal interest acquired as contained in the pleadings on the one hand, and a positive evidentiary statement by the condemnor as to what he intends to construct as part of the project on the other hand.
Since the evidence under scrutiny is not a statement of permissive policy intended to change or alter the legal effect of the estate acquired according to the pleadings, the Houston case, supra, although a valid statement of the law, has no application here.
Expressed in still another manner, a condemnee may show damages to his remainder based upon whatever rights the legal title acquired implies where there are no plans and specifications in evidence and there is nothing to show the manner of construction of the project.
A condemnor should be prohibited (where no plans, specifications or details of construction are offered and received in *329 evidence) from pleading that the worst possible damage will not happen to the condemnees' property merely because the condemnor is benevolent in nature and so states in policy matters.
At this point, we observe that if the trial court found either Resolution 1019 or the testimony of the engineer concerning the construction of the bridges improper, the only correct ruling would have been to strike the Resolution and testimony from the record but not to dismiss the cause with prejudice.
As previously stated, the issue of damages is framed by the offer and acceptance in evidence of construction plans and specifications. As a matter of fact, such evidence is admissible by either party to show actual or contemplated use of the property taken depending on that party's motive to either increase or mitigate damages to the remainder. If a project is not constructed in accordance with plans and specifications received in evidence, the remedy of the landowner is to come back into court and claim additional damages. Poe v. State Road Department, 1st D.C.A. 1961, 127 So.2d 898; State Road Department v. Lewis, 1st D.C.A. 1963, 156 So.2d 862. We do not say, however, that any matter which could have been put in issue in an original condemnation suit will not become res judicata. For example, in the case sub judice, if access to the remainder is severed by the taking and restored by provisions for bridges and it can be shown that the existing access prior to the taking was superior to that provided after the taking and that this factor has resulted in a decrease in the after value of the remainder, such matter should be concluded in the original suit. Conversely, if the access to the remainder is severed by the taking and restored by provisions for bridges and it can be shown that the existing access before the taking was inferior to that provided after the taking and that this factor has resulted in an increase in the after value of the remainder, such matter should also be concluded in the original suit.
As to the final point concerning participation of the United States Government in acquisition of lands by agencies representing the State of Florida either for itself or participating in a federally authorized project on behalf of the state, the question is answered in the negative. The United States of America is not a necessary or proper party to such action.
The Central and Southern Florida Flood Control District was created by the Legislature of Florida by a special act (Chapter 25270, Laws of Florida, 1949) to operate pursuant to Chapter 378, Florida Statutes in order to participate in the federally authorized program of flood control and water conservation as promulgated by the Congress of the United States in House Document 643, 80th Congress, 2d Session, 1948.
It is in reference to this document that the Legislature authorized the District in F.S. 378.01 F.S.A.:
"To cooperate with the United States in the manner provided by Congress for flood control, reclamation, conservation and allied purposes in protecting the inhabitants, the land and other property within the district from the effects of a surplus or deficiency of water when the same may be beneficial to the public health, welfare, safety and utility."
Under this document, Appellant is the local agency or instrumentality of the State charged with the duty of acquiring the lands necessary for the project. Upon acquisition, by negotiation and purchase or condemnation, Appellant certifies to the United States Army Corps of Engineers that it has so acquired the necessary title and that the Corps of Engineers may proceed with its obligation of construction of the project. It is at this stage of a project that contract plans and specifications are promulgated and utilized to obtain bidders *330 and ultimately contractors to build the required public works. Upon completion of the construction, the Corps of Engineers turns the project back to Appellant for continued operation and maintenance on behalf of the State of Florida.
The sole duty to acquire land rests in Appellant. The project will forever be operated and maintained by Appellant. Only in the construction stage does the Corps of Engineers play its role. The cooperation between Appellant and the Corps of Engineers has worked splendidly for twenty-three years and millions of dollars in public projects and an uncountable number of land acquisitions and condemnation proceedings throughout eighteen counties of the State of Florida.
What was stated in Southland, supra, pertaining to the State Road Department, is also true of Appellant when the court said 117 So.2d at page 516:
"From the foregoing statutory provisions it clearly appears that the legislature of this state had decided as a matter of public policy that it is in the best interest of the people of Florida that our highway department cooperate fully with the Federal Government in the construction and completion of the proposed interstate highway system."
Finally, we believe it error to call, swear and impanel a jury in a condemnation case where the issue of the necessity of the taking has not been resolved. The jury's only function is to fix full compensation under Article X, Section 6 of the Florida Constitution of 1968. The better procedure dictates that the necessity of taking be completely disposed of by the court before setting the case on the jury calendar.
Reversed and remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
OWEN, C.J., and CROSS, J., concur.