266 So.2d 382 (1972)
Wilma S. JONES et al., Petitioners,
v.
CITY OF TALLAHASSEE, a Municipal Corporation Created and Existing under the Laws of the State of Florida, Respondent.
No. R-416.
District Court of Appeal of Florida, First District.
September 19, 1972.
Rehearing Denied October 3, 1972.
L. Ralph Smith, of Smith, Moore & Huey, Tallahassee, for petitioners.
Roy T. Rhodes and W. Ralph Durrance, Jr., of Rhodes & Stephens, Tallahassee, for respondent.
WIGGINTON, Judge.
Petitioners seek review by certiorari of an order of taking rendered in an eminent domain proceeding pursuant to the authority of F.S. Chapter 74, F.S.A. The sole question presented for decision is whether the trial court erred in holding that the Respondent-City of Tallahassee was not guilty of fraud or bad faith amounting to a gross abuse of discretion when it determined that it was necessary to acquire an easement across petitioners' lands for the construction and operation of an electric transmission line.
In response to the declaration of taking filed by the City, petitioners filed their answers and defenses in which they denied that it was necessary for the City to acquire an easement across their lands for *383 the purposes described in the petition. It was and is their position that it would be more feasible both from an engineering and economic standpoint to route the transmission line in a different direction over the lands of others. They therefore urge that the action of the City in locating the line across their lands constituted bad faith and a gross abuse of discretion.
At the hearing before the court on the City's motion for an order of taking, testimony was adduced by both parties on the sole issue of necessity and whether the action of the City was vulnerable to the assault leveled against it. From the evidence it appears that in the early stages of planning the City engineers considered locating the transmission line along the south boundary of Section 5. This route was being considered at a time when it was thought that a 115KV transmission line constructed on a 125-foot-wide right-of-way would be sufficient. No part of this route touched petitioners' lands. At a later date the City approved the present route which angles northwesterly from a point 500 feet west of the southeast corner of Section 5 across lands of the petitioners for a limited distance, then in a westerly direction to the substation located near the southwest corner of the section. The City considered both economic and engineering factors in selecting the final route for the proposed line.
The expert real estate appraiser employed by the City reported that a substantial savings in right-of-way acquisition costs could be effected by moving the line to the revised location partly across lands owned by petitioners. The opinions with respect to the cost of acquisition as expressed by the petitioners' appraisers were to the contrary. The City engineers testified that, in view of anticipated growth in the area to be served, it was now deemed necessary to construct a 230KV transmission line on a 200-foot-wide right-of-way rather than a 115KV line on a 125-foot-wide right-of-way as originally planned. Because of this change in design, together with the desirability of avoiding the congestion which will be created by the construction of Federal Interstate Highway 10 in the vicinity of its intersection with Thomasville Road north of the Capital Circle truck route, the engineering experts recommended that the location of the line be changed to the present route which crosses petitioners' lands. It was upon a consideration of the foregoing factors that the City engineers would not agree with the experts employed by petitioners that to run the line in a due east-west direction along the south boundary of Section 5 would be more feasible from an engineering standpoint than across petitioners' lands as presently proposed. The report and recommendation of the City's appraiser and engineering staff were approved by resolution duly adopted by the City Commission.
By the order of taking here reviewed the trial court found and determined that the City was entitled to the immediate possession of the lands described in the petition, thereby rejecting petitioners' challenge to the good faith and lawful discretion of the City exercised in the adoption of its resolution of necessity.
The determination by an acquiring authority as to the location, quantity, and estate of land required for a public purpose is a legislative function regardless of who is charged with the decision.[1]
The law is well established in this state that a public body vested by law with the power of eminent domain possesses a broad discretion in determining the necessity for acquiring property needed in order to serve a public purpose. Decisions reached in the exercise of such discretion should not be disturbed in the absence of proof that the acquiring authority acted in bad faith or was guilty of oppression and a gross abuse of power.[2] It has been held *384 that the findings by a city on the question of necessity in an eminent domain proceeding may not be easily or casually overthrown by the courts, but strong and convincing evidence of the most conclusive character is required to upset the findings of the elected officials charged with responsibility in such matters.[3]
The general rule as propounded by Nichols in his work on eminent domain holds to the view that the owner of land sought to be acquired in a condemnation action is not entitled to be heard upon the question of whether an equally available site was not already in possession of the public or could be bought elsewhere for less than the fair value of his land.[4] It has been repeatedly held by the courts of this state that the determination of the route or location of the proposed improvement by the acquiring authority to whom the legislature has delegated the power of eminent domain will not be disturbed by the courts in the absence of a clear and convincing showing of fraud or bad faith amounting to a gross abuse of discretion.[5]
The only proof in the record before us on which petitioners rely to establish fraud or bad faith amounting to a gross abuse of discretion on the part of the City is that it would be more feasible from an engineering standpoint to locate the line along the southern boundary of the section across lands of others, the cost of which right-of-way would not exceed the cost of right-of-way for the location across petitioners' lands. The City had before it at the time it made its decision the opinion of its own appraiser to the effect that the acquisition cost of the right-of-way for the revised location would be substantially less than for the original location. The city officials elected to believe and place confidence in the opinion of this expert rather than in the opinions of the appraisers employed by petitioners. The action of public officials which is motivated by an effort to save money for the taxpayers they represent is indeed laudable and should not per se be characterized as an act of bad faith or gross abuse of discretion. The trial court apparently reached this conclusion in rendering the order appealed herein, and we are constrained to the view that it was correct in so doing.
Petitioners cite and rely upon as support for their position the decision recently rendered by the Second District Court of Appeal in the case of Sapp v. Hillsborough County.[6] Since a petition for review by certiorari of that decision is presently pending in the Supreme Court, we will make no comment upon the merits of the rule of law pronounced therein. Regardless of its ultimate fate, we do not consider that decision to be precedent which supports the position taken by petitioners herein because of the marked factual differences which distinguish the two cases.
For the reasons and upon the authorities above cited, we hold that petitioners have failed to demonstrate that the City was guilty of fraud or bad faith by the adoption of its resolution of necessity which forms the basis of this action. The writ of certiorari is accordingly quashed and the petition dismissed.
SPECTOR, C.J., and JOHNSON, J., concur.
NOTES
[1] United States v. 1177 Acres of Land in Dade County, (S.D.Fla. 1943) 51 F. Supp. 84.
[2] Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527; Staplin v. Canal Authority, (Fla.App. 1968) 208 So.2d 853.
[3] Rott v. City of Miami Beach, (Fla. 1957) 94 So.2d 168.
[4] 1 Nichols on Eminent Domain 580, § 4.11[3](4), (Third Edition).
[5] Sibley v. Volusia County, 147 Fla. 256, 2 So.2d 578, 582 (1941); Spafford v. Brevard County, 92 Fla. 617, 110 So. 451, 458.
[6] Sapp v. Hillsborough County, (Fla.App. 1972) 262 So.2d 256.