**PALM BEACH COUNTY v. INLET BAY CLUB, Inc., et al.**
No. 72-C-4514.
Circuit Court, Palm Beach County.
November 15, 1972.

Michael B. Small, County Attorney, and H. Adams Weaver, Assistant County Attorney, for the plaintiff.

Sidney A. Stubbs, Jr. of Jones, Paine & Foster, West Palm Beach, for the defendants.

JAMES C. DOWNEY, Circuit Judge.

This cause came on to be heard upon application for an order of taking, the necessity for which was placed in issue by the answer of the defendant, Inlet Bay Club, Inc., the owner of the property in question. The court heard the testimony of the parties and their witnesses and has considered the briefs filed by counsel.

The court finds from the evidence that the property in question is located in the town of Ocean Ridge; that it is 213 feet wide, north and south, extending from the Atlantic Ocean to the Intra-Coastal Waterway, and that it is dissected by Highway A1A. Immediately north of this parcel is a tract 200 feet wide owned by the South Lake Worth Inlet District, a public body, which tract abuts the South Lake Worth Inlet, commonly known as the Boynton Inlet. The 100 feet immediately north of the inlet is also owned by the aforesaid district. The Inlet District property is presently

devoted to recreational use, specifically for parking and fishing in conjunction with the beach and jettys along the inlet. The parcel sought to be taken has for many years been primarily devoted by private enterprise to boating and fishing, with a restaurant and parking in support of those uses.

Since November of 1969, and a favorable referendum on the issuance of bonds for beach acquisition, the county commission of Palm Beach County has been engaged in an effort to locate beach sites along the coastal area of the county. Prior to March of 1971 a select committee of county personnel prepared a priority list of beach sites for acquisition and submitted it to the county commission. The committee considered the parcel sought to be taken but rejected it, as a consequence of which it did not appear on the priority list.

The staff of the Palm Beach County Area Planning Board, an agency created by Special Act of the legislature, Chapter 65-2063, Laws of Florida, prepared a recommendation on beach sites for acquisition which was adopted by that board on April 26, 1971. This recommendation too failed to include acquisition of the parcel in question.

On January 11, 1972, the county commission formed a beach acquisition committee composed of two commissioners and the county attorney. In addition, a beach acquisition task force, composed of county staff personnel, was also formed. The task force set about to analyze all pertinent factors relative to the property in question, and reported their findings to the beach acquisition committee. The latter committee then reported to the full commission, which report rejected the parcel in question for a number of specified reasons. The committee recommended the commission disclaim any further interest in said parcel and directed the commission's attention to an 1100 foot parcel of beach front property in the town of Ocean Ridge approximately one mile south of the parcel in question.

During the various stages of consideration of this parcel the town of Ocean Ridge consistently advised the commission of its strong objection to any use of this property as a public recreation site. The town passed a resolution approving acquisition by the county of an 1100 foot parcel which abuts the existing public beach in Ocean Ridge. This parcel is approximately one mile south of the parcel in question. Although the commission resolved as late as July 18, 1972, and so advised the town by letter as of July 31, 1972, that it would pursue acquisition of the 1100 foot parcel and no other property in Ocean Ridge, on August 8, 1972, the commission

resolved to institute eminent domain proceedings on the parcel in question.

Thus, the evidence shows that all background studies and recommendations militated against acquisition of the parcel in question. These studies and recommendations included the beach acquisition committee, the beach acquisition task force, the area planning board, the town of Ocean Ridge, and two county commissioners who opposed the acquisition. This alone of course does not demonstrate a lack of necessity, but it does pique one's interest as to just what constituted the necessity.

Unquestionably, acquisition of beach sites should be pursued. However, there are 1100 feet of beach front approximately one mile south of the parcel in question which has been included on the recommended priority list of sites for acquisition by at least one of the committees studying beach sites for acquisition by the commission. Other beneficial aspects of said tract are the town of Ocean Ridge's approval (although, in view of the county's resolution to condemn the parcel in question, that approval has been at least temporarily withdrawn) said approval being a condition precedent to the reception of federal matching funds. Additional attractive aspects are proximity to an established public beach and availability for use without injection of zoning problems associated with the parcel in question. On the other hand, this parcel has some inherent drawbacks. It "has one of the worst beach erosion problems in the entire county", to quote the county attorney in his remarks to the county commission on January 27, 1972. He pointed out that the sand transfer plant at the inlet doesn't hold out much hope for replenishing the beach. In addition, the waters along this beach are not fit for public bathing as a result of the pollution passing through the inlet from the Inland Waterway. It may be that in due time the pollution problem will be resolved and perhaps even the starved beach may be replenished. However, as of this date neither seems acceptable.

While the ultimate choice of sites may no doubt be for the commission, the foregoing factors are relevant as they bear upon the question of necessity for the taking of this property.

One of the commissioners who voted in favor of the taking, testifying on behalf of the county, indicates that he understood the Inlet District property abutting the inlet was only 100 feet wide, whereas in fact it is 200 feet wide. Asked if he had known the parcel was 200 feet wide, would it have made any difference in his opinion regarding the taking, he responded that "he assumed so". He thought 300 feet would include the Inlet District parcel, and that amount of property would "best serve the purpose of the public".

In addition, he agreed that the new appraisal by the county appraiser of $440,000 would also have an effect upon his decision. At the time he voted to take the property he understood the appraisal was approximately $266,000.

The county planner, testifying on behalf of the county, estimated the reasonable cost of this property for the intended use would be $1,000 to $1,500 per front foot. But the appraisal testified to by the county appraiser is $440,000 or about $125,000 in excess of the planner's estimate of reasonable value. The planner further testified that it was necessary for the county to take this parcel. But his reasons boiled down to the opinion that the county ought to take every foot of beach it could get for public use. In the final analysis, it seems to the court the county's entire case is based upon "public benefit", "public demand", and "public desire", which were held insufficient in Peavy-Wilson Lumber Co. v. Brevard County, 31 So.2d 483.

In addition, the testimony of several of the county's witnesses adduced in support of the issue of necessity is decidedly weakened by portions of the documentary evidence wherein they are recorded as rejecting this parcel for acquisition. These include several commissioners, the county engineer and the county attorney.

Usually the determination of necessity by a condemnor will not be disturbed by the courts in the absence of bad faith or gross abuse of discretion. Jones v. City of Tallahassee, 266 So.2d 382; Wilton v. St. Johns County, 123 So. 527; Sibley v. Volusia County, 2 So.2d 578. However, in 1945 in passing §127.01, Florida Statutes, it is clear the legislature intended to limit the grant of authority to exercise eminent domain when the purpose to be accomplished is the acquisition of title to land for parks, playgrounds, recreational centers, or other recreational purposes. The presumption of validity customarily cloaking such legislative determinations was expressly denied the condemnor. The question of necessity stripped of presumptions, legislative discretion and other plus factors is a judicial question. Peavy-Wilson v. Brevard County, supra. The rule announced in Wilton v. St. Johns County, supra, Jones v. City of Tallahassee, supra, and like cases to the effect that the determination of necessity and the choice of alternatives is a legislative matter involving broad discretion and will not be interfered with by the courts absent fraud or gross abuse of discretion, are inapposite in view of the proscribed statutory grant of authority to condemn for the purpose of parks, playgrounds, recreational centers, etc. Thus, when necessity is placed in issue in this type of condemnation case, the condemnor and the condemnee each start from scratch, and

the condemnor, being the petitioner, has the burden of proving that the taking is necessary.

Another question raised by the property owner is that the property is located in a zoning classification of the town of Ocean Ridge which does not allow of its use as a public beach and recreation center. If the property cannot be used for the purpose intended this would appear to be pertinent on the question of necessity. Defendant relies upon City of Treasure Island v. Dekker, 174 So.2d 756, which holds that one municipality may enforce its zoning ordinances against property owned therein by another municipality. While a county may have greater stature than a city, being an agency of the state, when acting in a proprietary capacity it would seem that the rule should be the same. Why should a county, acting in a proprietary capacity, be allowed to invade the orderly planning and growth of a municipality and disrupt its comprehensive zoning plan by using property out of kilter with that municipal plan? To do so violates the rule announced in the *Treasure Island* case —

> "That a government within another government or even the governmental body itself if operating in a proprietary capacity is governed by the zoning regulations of the area in the absence of specific legislative pronouncements to the contrary."

> ". . . the rule apparently represents the majority view and it appears to us to be the correct rule because it permits each governmental unit to perform its functions without serious interference from the other."

That a governmental unit acts in its proprietary capacity in the operation and maintenance of playgrounds, beaches and recreational areas is settled in this jurisdiction. Rogers v. City of Miami Springs, 231 So.2d 257; Woodford v. City of St. Petersburg, 84 So.2d 25; Picket v. City of Jacksonville, 20 So.2d 484.

Finally, this record leaves little doubt that the town of Ocean Ridge is not disposed to change its zoning to accommodate the county's proposed use of the property.

On the question of estoppel, the court finds the evidence insufficient.

Viewing the evidence in its totality, it appears to the court that the plaintiff has failed to carry the burden of proof on the issue of necessity or as to the amount of land taken.

It is thereupon ordered and adjudged that the plaintiff's application for an order of taking is denied.