281 So.2d 333 (1973)
Edward BALL, Petitioner,
v.
CITY OF TALLAHASSEE, a Municipal Corporation Created and Existing under the Laws of the State of Florida, Respondent.
No. 43297.
Supreme Court of Florida.
July 18, 1973.
*334 Edgar C. Booth, of Booth & Booth, P.A., and J. Lewis Hall, Jr., of Hall, Hartwell & Hall, Tallahassee, for petitioner.
Roy T. Rhodes and W. Ralph Durrance, Jr., of Rhodes, Stephens, Bryant & Durrance, Tallahassee, for respondent.
DEKLE, Justice.
We have for certiorari review a decision of the First District Court of Appeal reported at 269 So.2d 750 involving the taking of a perpetual easement by eminent domain. The decision is in direct conflict with the law of this state as previously announced in Canal Authority v. Miller, 243 So.2d 131 (Fla. 1970); Canal Authority v. Litzel, 243 So.2d 135 (Fla. 1970); and Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527 (1929), and other cases, which gives us jurisdiction pursuant to Fla. Const. art. V, § 3(b)(3) (1973), F.S.A. Nielsen v. City of Sarasota, 117 So.2d 731 (Fla. 1960).
At the outset, the Tallahassee City Commission adopted a resolution authorizing the condemnation for a perpetual easement, of certain lands for purposes of constructing, operating and maintaining electric transmission lines and appurtenances. As a result thereof, the City of Tallahassee, respondent herein, instituted eminent domain proceedings in the Leon County Circuit Court by filing a petition and declaration of taking which sought to acquire a perpetual easement along the proposed route for the transmission lines. This proposed taking involved land owned by various persons including petitioner.
The landowner answered the petition, denying that the property sought was necessary for the purposes described and denying the city's allegation that it had a present intent to use the property sought to be condemned, affirmatively alleging that the proposed taking constituted a gross abuse of discretion.
At the initial hearing, which was held prior to service of process on petitioner, some of the landowners were represented. Subsequently, a second hearing was held and limited to the propriety of acquiring parcel 18, owned by petitioner herein. At *335 that second hearing, no new evidence was presented. The city chose to rely entirely on the evidence presented at the first or initial hearing and the parties stipulated to its admission into evidence. That evidence consisted of the city's resolution, a map, a survey and the testimony of the city electrician taken at the initial hearing and his earlier deposition.
The diagram from the city's route map in evidence best depicts the areas sought for the proposed power line in question:

The proposed route approaches the petitioner's land from the east, through parcel 17-A and then continues at a right angle to the north in petitioner's parcel 18. The width of the perpetual easement is 200 ft. except in the northernmost portion of petitioner's land which is 100 ft., which matches the continuing 100 ft. easement beyond. The "FUTURE" proposed easement to the left (bottom) which is 200 ft. simply goes off into an open area with no connection shown in the record as to its ultimate future purpose.
The transcript of the testimony of Mr. Dykes, Superintendent Electrician of the City of Tallahassee, generally dealt with the necessity of lines to be constructed as a part of the line loop of the city system to inter-tie with Florida Power Corporation. The purpose of the inter-tie was to make the city system more reliable.
Mr. Dykes' transcript did not deal with the last mentioned southern extension of parcel 18, upon which the record shows no lines or construction, and the city chose *336 not to introduce additional testimony from him at the hearing of August 11, 1972.
A careful study of the record fails to reveal any evidence relating to the southern extension of parcel 18 which is totally outside the presently proposed power line in question and no evidence has been introduced to show any necessity for its taking. In addition, there is no evidence indicating the necessity for two different widths of easement on any of petitioner's land. One easement is 200' wide and the other continuing easement is 100' wide, along the assumed route of the proposed power line angling to the north.
Following the second hearing, the trial judge entered an order granting the requested perpetual easement over the entire land sought from petitioner. Certiorari in the First District Court of Appeal followed. In denying certiorari and approving the order of taking, the district court quoted from its earlier pronouncement in the case of Jones v. City of Tallahassee, 266 So.2d 382, 383-384 (Fla.App.1st 1972), where it had said:
"The law is well established in this state that a public body vested by law with the power of eminent domain possesses a broad discretion in determining the necessity for acquiring property needed in order to serve a public purpose. Decisions reached in the exercise of such discretion should not be disturbed in the absence of proof that the acquiring authority acted in bad faith or was guilty of oppression and a gross abuse of power. It has been held that the findings by a city on the question of necessity in an eminent domain proceeding may not be easily or casually overthrown by the courts, but strong and convincing evidence of the most conclusive character is required to upset the findings of the elected officials charged with responsibility in such matters." (Emphasis ours.)
This statement of the law is erroneous in two respects. First, it provides that the condemning authority's exercise of its eminent domain power based upon its own findings will ipso facto stand as sufficient without regard to necessity and will not be disturbed unless the landowner presents strong and convincing evidence of the most conclusive character to the contrary. In essence, this rule does not require the condemning authority to present any evidence indicating a reasonable necessity for the proposed taking.
Preliminary sufficient evidence of necessity of taking is initially required of the condemning authority before any burden shifts to the landowner. To hold otherwise would be contrary to the proof required in all other cases. Any plaintiff must initially prove the several essential elements of his case.
Miller supports the position that a condemning authority's "findings" by its resolution or otherwise as to necessity, do not constitute proof of necessity, where the landowner has filed, as here, an answer denying necessity as to his particular parcel. The condemning authority must come forward with an initial showing of need before the landowner is called upon to present any evidence.
The rule stated by the First District in the instant case conflicts with this Court's opinion in Canal Authority v. Miller, supra, in allowing "findings" of a condemning authority to substitute for an initial showing of need required by Miller. By adopting the rule which it did in this respect, the district court departed from our legal principles set forth in Canal Authority v. Miller, 243 So.2d 131 (Fla. 1970), and Canal Authority v. Litzel, 243 So.2d 135 (Fla. 1970). In those Canal Authority cases, we expressly stated that the acquiring authority must come forward initially with some evidence showing a reasonable necessity for the proposed taking. If the condemning authority does not present any evidence, the petition for condemnation fails even though the landowner has offered no *337 evidence supporting his position. In other words, the landowner in these circumstances is not required to prove anything.
Secondly, the district opinion increased the landowner's burden of proof by requiring evidence of bad faith or oppression and abuse of power. Stated another way, the court said abuse of discretion cannot be the sole basis for contesting the act or acts of a condemning authority (which Canal said was alone sufficient); that there must also be, said the DCA, evidence in addition to the proof of abuse of power, further evidence demonstrating bad faith or oppression as well. Such a dual requirement of proofs differs from this Court's decisions in Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527 (1929); Sibley v. Volusia County, 147 Fla. 256, 2 So.2d 578 (1941); and the Canal Authority cases, holding that abuse of discretion, standing alone, can override the condemning authority's exercise of its eminent domain power, without respect to "bad faith" or oppression (another independent basis of sufficient proof to refute a prima facie case of necessity).
Upon due reflection, we conclude that we are not in accord with the district court's newly espoused rule; we hereby disapprove this extension of required proofs and adhere to our own rule appearing in Wilton, Sibley, and the Canal Authority cases.
Having resolved the conflict created by the district court, we now turn to an application of our relevant legal principles to the factual situation before us. The trial court and the district court of appeal agree that the city presented evidence (as required by the Canal Authority cases) showing a reasonable necessity for a taking of an easement. Our reading of the record, however, does not disclose any evidence indicating a reasonable necessity for the taking of a perpetual easement over petitioner's parcel 18. It is true that the city electrician in his testimony opined that the entire route shown by the maps and plats in evidence were necessary to provide for the construction, maintenance and operation of the distribution system. This statement related not only to the city's present plans but to the city's future plans for the total electric distribution system throughout the city and county, but there was a complete void in the city's proof of necessity, initially required, to support this vaguely asserted "future need." Next year? Twenty years into the future? To where? For what?
Moreover, the evidence which was offered purportedly involved the necessity for the entire project; it did not deal sufficiently with regard to the particular parcel of land involved here, i.e., parcel 18, to show the required reasonable necessity. The city must present evidence pinpointing the need for the particular property, i.e., parcel 18, sought to be condemned. No such evidence being submitted by the city, its petition for eminent domain, as in Miller, cannot be approved even though petitioner did not offer any evidence to refute the condemnation proposal.
Accordingly, certiorari is granted; the decision of the First District Court of Appeal is quashed and the cause remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
CARLTON, C.J., McCAIN, J., and GALE, Circuit Judge, concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting).
The opinion of the District Court authored by Judge Wigginton affirming the judgment of condemnation, presents no basis for our taking conflict certiorari jurisdiction and quashing the condemnation judgment. See Ball v. City of Tallahassee (DCA 1st) 269 So.2d 750. The opinion carefully outlines the evidence submitted by the City in support of the necessity for the taking of Petitioner's parcel of land. It refers to the testimony of the City's Superintendent Electrician (Mr. Joe Dykes), whose duties include the responsibility for *338 transmission of electricity over the City's electric distribution system. The opinion recites:
"... . He testified that in his opinion and in the opinion of the consulting engineers the easements sought to be acquired over the route shown by the maps and plats in evidence, both as to width and location, were necessary in order to provide for the construction, maintenance and operation of an adequate electric distribution system capable of serving not only the present needs of the people within the service area of the City, but also the anticipated needs which will arise in the foreseeable future as a result of an expanding population and economy developing within the city and county. This witness explained that although the present plans contemplate the construction and installation of a 115 KV transmission line which could be accommodated on a 100-foot-wide easement, anticipated needs for larger electric transmission lines in the reasonably near future will require the installation of a 230 KV transmission line so as to tie in on the north with The Southern Company, an electric generation and transmission company operating in South Georgia, and with Florida Power Corporation, an electric generating and distribution company operating just south of the distribution system constructed and maintained by the City. All experts agree that to accommodate a 230 KV transmission line, the 200-foot-wide easement sought to be acquired in this proceeding across the lands of petitioner and others is necessary." (Emphasis supplied.)
In commenting on the Petitioner's contention that the City should be confined to the acquisition of an easement not more than 100 feet wide over his lands because it presently intends to construct only an 115 KV line requiring an easement of no greater width than that; and that the City has no lawful authority or power to acquire a 200-foot-wide easement merely because it anticipates that an easement of such width will be necessary to serve future requirements, the District Court said:
"... With these contentions we are unable to agree. As said by the trial court in commenting upon this position urged by petitioner, it would be a greater abuse of discretion on the part of the City to acquire only the narrower right-of-way to accommodate the smaller transmission line to be constructed at the present time since the known growth factors experienced in the past and the expansion of both the population and economy of the county which is reasonably anticipated to take place in the near future will require a wider easement in order to accommodate the larger transmission line to be constructed and installed at a later time. With this observation we are impelled to agree."
The District Court then pointed out that it found no greater estate or interest was being taken of petitioner's parcel of land than was necessary to serve the City's particular public use, citing Jones v. City of Tallahassee (DCA 1st) 266 So.2d 382. The District Court quoted from Jones as follows:
"The law is well established in this state that a public body vested by law with the power of eminent domain possesses a broad discretion in determining the necessity for acquiring property needed in order to serve a public purpose. Decisions reached in the exercise of such discretion should not be disturbed in the absence of proof that the acquiring authority acted in bad faith or was guilty of oppression and a gross abuse of power. It has been held that the findings by a city on the question of necessity in an eminent domain proceeding may not be easily or casually overthrown by the courts, but strong and convincing evidence of the most conclusive character is required to upset the findings of the elected officials charged with responsibility in such matters." (Emphasis supplied.)
*339 The majority of this Court proceeds to quash the District Court decision in an exceedingly anomalous manner. It first refers to the southern prong of the 200-foot strip as a future easement which, it says, "simply goes off into an open area with no connection shown in the record as to its ultimate future purpose." This is an obvious mistake, contrary to the District Court's resume of the testimony of the City's Superintendent Electrician (Mr. Joe Dykes) that "anticipated needs for larger electric transmission lines in the reasonably near future will require the installation of a 230 KV transmission line so as to tie in the North with The Southern Company ... . and with Florida Power Corporation, an electric generating and distribution company operating just South of the distribution system constructed and maintained by the City. All experts agree that to accommodate a 230 KV transmission line, the 200-foot wide easement sought to be acquired in these proceedings across the lands of petitioner and others is necessary." (Emphasis supplied.)
According to the record, Mr. Dykes testified that the purpose of the total line originating at Number 4 Substation (located at Riggins Road and Miccosukee Road) is to loop the City by running north, west and southwest back to the Hopkins Steam Generating Plant, located on the west side of Tallahassee. Mr. Dykes testified that the line closing the loop from Number 7 Substation (Parcel 17-b) into the Hopkins Plant would be a 230 KV line in the foreseeable future. Mr. Dykes also testified that as recommended by the consulting engineers, a 200-foot right-of-way was needed for a 230 KV line. Mr. Dykes testified that the City needed the right-of-way of the size, width and location that is described in the proceedings.
Despite the clear identification of the future need of the 230 KV transmission line to be located on the 200-foot strip of Petitioner's land, including a reference thereto on the City's map in the majority opinion that it was a "future required easement," the majority stoutly maintains:
"Mr. Dykes' transcript did not deal with the last mentioned southern extension of parcel 18 ... A careful study of the record fails to reveal any evidence relating to the southern extension of parcel 18... ."
The majority then complains that one easement is 200 feet wide and the other continuing easement is 100 feet wide, but makes no explanation supporting its complaint as to these different widths as a basis for legally deprecating the proposed taking.
Having paid its respects to the City's evidence and claimed inadequacy thereof to show necessity for the taking, the majority then proceeds to attempt to fault the District Court's legal reasoning. It states that the quotation from Jones v. City of Tallahassee, supra, is erroneous because it "does not require the condemning authority to present any evidence indicating a reasonable necessity for the proposed taking." The cases of Canal Authority v. Miller (Fla. 1970) 243 So.2d 131 and Canal Authority v. Litzel (Fla.) 243 So.2d 135, are then cited in an effort to support this novel proposition concerning the failure of Jones, and also for the purpose of demonstrating conflict.
However, a cursory reading of the District Court's opinion indicates that the majority of this Court is reading the quote from Jones narrowly and in isolation from the facts supporting the necessity of the City's taking and the remainder of the District Court's opinion. The quote from Jones is coupled with a statement concerning proof of necessity offered by the City. The District Court said:
"From the record before us it affirmatively appears without dispute that the engineering experts employed by the City found it to be necessary that a perpetual easement of the width and location over petitioners' lands and the lands of others as shown by the right-of-way maps offered in evidence, be acquired .. . The reasons supporting the conclusions of these experts appear prima *340 facie to be well-founded and supportable by logic and common sense. The least that can be said of the evidence before the trial court on the issue of necessity is that the City amply proved a prima facie case supporting its right to acquire an easement over the lands owned by petitioner, and no evidence to the contrary was adduced." (Emphasis added.)
There is nothing in the District Court opinion to the effect a condemning authority need not present any evidence showing reasonable necessity for a proposed taking where an affirmative defense is filed claiming there is no public necessity for the taking. On the contrary, the District Court quotes from the City's evidence, particularly from its expert witness, Mr. Dykes, and concludes the City made a prima facie showing of necessity as to which no contrary evidence was adduced.
The Miller and Litzel cases, supra, are clearly inapposite as bases for conflict with the District Court decision. The Miller case was one in which the condemnor failed to go forward with its burden to present competent evidence that a fee simple title rather than an easement was necessary. The Litzel case is supportive of the District Court decision herein. There, as in this case, no evidence was produced to negative condemnor's good faith by the condemnee. The condemnor in Litzel produced its initial evidence indicating exercise of its discretion with supportive evidence to choose and condemn as necessary a fee simple in certain lands. The condemnee merely claimed, as the Petitioner did herein, that the condemnor did not as a matter of law demonstrate good faith. The claim was overruled because we said: "In order to disturb this exercise of discretion respondent had to show bad faith or abuse of discretion."
Next, the majority quibbles with the District Court's quote from the Jones case by arguing that the District Court increased the landowners' burden of proof by requiring evidence of bad faith or oppression and abuse of power. It appears that in this respect the majority is really "nit-picking", trying some way to grammatically postulate a conflict. This particular argument is exceedingly tenuous. Bad faith, oppression, abuse of power or discretion are all of the same genre and are often referred to interchangeably in judicial opinions describing the burden a condemnee must assume in refuting a condemnor's prima facie showing of public necessity for a taking. As a matter of fact the petitioner offered no contrary evidence to prove any of such elements, i.e., bad faith or abuse of discretion, etc., either together or separately. Therefore, it is immaterial to this particular case that the District Court may have mistakenly made reference to these matters conjunctively. The error, if it was one in Jones was one of semantics only, which could be straightened out if really necessary by a corrective opinion, but this semantic error, if one, in nowise resulted in a miscarriage of justice in the case.
Without citation of authority, yet straining to fault the condemnation, the majority discounts the testimony in the record and the approval thereof by the District Court that the City anticipates it will need the Petitioner's parcel of land for the 230 KV transmission line "in the reasonably near future" to tie in on the South with Florida Power Corporation's facilities and argues there is a complete void in the City's proof and irrelevantly queries whether the need will be next year or twenty years hence. Then it ignores the City's testimony about the projected tie-in with the Florida Power Corporation and querulously asks, "To where? For what?"
This line of argument overlooks that it has long been the law of Florida that the exercise of eminent domain is not restricted to provide only for present public needs, but also to provide for needs which may reasonably be anticipated in the future. See Carlor Co. v. City of Miami (Fla.) 62 So.2d 897, wherein this Court, in approving condemnation of lands for future public use said: "It is the duty of public officials to look to the future and plan for the future. *341 In erecting public buildings and public improvements, it is likewise the duty of public officials to build and plan not only for the present but for the foreseeable future." Text 902. See also 12 Fla.Jur. Eminent Domain, § 62; and 26 Am.Jur.2d Eminent Domain, § 116.
It is obvious from the whole tenor of the majority's opinion that they have simply substituted their fact finding determination of public necessity for a condemnation taking for that of the trial judge who was affirmed by the District Court.
I find no basis for the exercise of our certiorari jurisdiction. Quashing the decisions of the lower courts in this case is a clear abuse of our authority and leaves in the decisional law an incongruous decision contrary to the stare decisis of known eminent domain law.