346 So.2d 988 (1977)
CITY OF JACKSONVILLE, Petitioner,
v.
Frank Lee GRIFFIN and Sophie Lee Griffin, His Wife, Individually and D/B/a F.L. Griffin Company, Inc., Respondents.
No. 47745.
Supreme Court of Florida.
March 31, 1977.
Rehearing Denied June 28, 1977.
Harry L. Shorstein, Gen. Counsel, Frederick J. Simpson, Acting Gen. Counsel, and William Lee Allen, Asst. Counsel, Jacksonville, for petitioner.
O.O. McCollum, Jr. of Thames & McCollum, Jacksonville, for respondents.
SUNDBERG, Justice.
This is a petition for writ of certiorari to review a decision of the First District Court of Appeal, reported at 314 So.2d 605, which is asserted to be in conflict with Canal Authority v. Miller, 243 So.2d 131 (Fla. 1970); Canal Authority v. Litzel, 243 So.2d 135 (Fla. 1970); and Central & S. Fla. Flood Control Dist. v. Wye River Farms, Inc., 297 So.2d 323 (Fla. 4th DCA 1974). Because we find a conflict in decision between this case and the cited cases for the reasons hereinafter expressed, jurisdiction vests pursuant *989 to Article V, Section 3(b)(3), Florida Constitution.
On May 15, 1973, petitioner City of Jacksonville filed a complaint for condemnation in eminent domain together with a declaration of taking. The trial court entered an order of taking without first hearing testimony or receiving any other evidence as to necessity. The District Court of Appeal, First District, granted certiorari and reversed and remanded for the purpose of taking such testimony. Griffin v. City of Jacksonville, 299 So.2d 90 (Fla. 1st DCA 1974).
After remand the trial court again entered an order of taking. The evidence then before the court established that the City adopted a Neighborhood Development Plan (NDP) pursuant to the Community Redevelopment Act of 1969. Chapter 163, Florida Statutes, Part III. The NDP assigned respondent's land a designation of C-2 with a number one priority for rehabilitation, clearance, and redevelopment as a residential area after making a determination, as required by Chapter 163, that
"... [t]he [affected] areas are slum areas and are a detriment and a menace to the safety, health and welfare of the inhabitants and users thereof and of the locality at large because of a predominance of buildings or improvements which by reason of delapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sanitation or open spaces, high density of population and overcrowding or in the existence of conditions which endanger life or property by fire or other causes, or any combination of such factors, is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency or crime, and the members of this governing body have been fully apprised and are aware of these facts and conditions;..."
In its opinion, the District Court found that, other than the resolution authorizing the taking of the land for use in its NDP, the City adopted no specific plan for redevelopment, did not specify respondent's land for any particular use, did not decide whether the redevelopment should be by the City or by private enterprise, and did not take any official action toward other land within the C-2 area that had already been taken by eminent domain except to raze the buildings and level the land.
Upon petition for certiorari to the circuit court, the District Court of Appeal, First District, again reversed and remanded, citing Ball v. City of Tallahassee, 281 So.2d 333 at 337 (Fla. 1973), which states:
"The city must present evidence pinpointing the need for the particular property ... sought to be condemned. No such evidence being submitted by the city, its petition for eminent domain ... cannot be approved." (Emphasis supplied)
The District Court also noted that respondent's land was adjacent to a railroad track and other property owned by the railroad and that such property was also within the C-2 area of the NDP. Since the City indicated it had no present plan to acquire the adjoining property, the District Court deemed it relevant to inquire as to the necessity of acquiring respondent's property while permitting the adjoining property owned by the railroad (exclusive of the railroad right-of-way) to remain unmolested. After further observing that the City had made no determination as to what the zoning should be or which streets should be located in the affected area, it concluded:
"... In the absence of some specific plan for development of the property in the reasonably foreseeable future, including plans for financing such a vast undertaking, no need is demonstrated for the displacement of residents from their homes and business from their locations." 314 So.2d 605 at 607.
Although petitioner presents three points as being involved in these proceedings, we believe the essential issue is whether the City made a showing of reasonable necessity for the condemnation of respondent's land. The District Court answered this question in the negative, relying almost in toto upon Ball v. City of Tallahassee, supra. *990 That court seemed to base its decision on two points: (i) the City failed to demonstrate a present necessity for the taking of respondents' specific parcel as the court deemed to be required by Ball and (ii) the City abused its discretion and discriminated against respondents in selecting their land to be taken while leaving adjacent property owned by the railroad unaffected.
We believe that the district court misperceived the import of the Ball case and, therefore, its decision is in conflict with Wye, Miller, and Litzel, supra. The Ball decision stands principally for the proposition that there is a two-tier model to be observed when determining whether a condemning authority has met its burden of proving reasonable necessity for the taking. In the first instance, the condemning authority is obliged to show a reasonable necessity for the condemnation. Canal Authority v. Miller, supra, 243 So.2d at 134. Once such a reasonable necessity is shown, the exercise of the condemning authority's discretion should not be disturbed in the absence of illegality, bad faith or gross abuse of discretion. Inland Waterway Development Co. v. City of Jacksonville, 38 So.2d 676 (Fla. 1948); Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527 (1929); Staplin v. Canal Authority, 208 So.2d 853 (Fla. 1st DCA 1968). Although it will not be presumed that a condemning authority abused its discretion or acted illegally or in bad faith in making its finding of reasonable necessity in a resolution of taking, such authority, in order to meet its burden, must put on some evidence of reasonable necessity for the taking. Once this is shown, however, the landowner must then either concede the existence of a necessity or be prepared to show bad faith or abuse of discretion as an affirmative defense. Canal Authority v. Miller, supra, 243 So.2d at 134.
The question really is whether the petitioner came forward with some evidence showing a reasonable necessity for the proposed taking. This Court in Ball agreed that the City of Tallahassee presented evidence showing a reasonable necessity for a taking of an easement but concluded that there was no proof of a reasonable necessity for the taking of a perpetual easement over the property of Mr. Ball because the City's proof did not support a "vaguely asserted `future need'." Ball v. City of Tallahassee, 281 So.2d 333 at 337. The decision then expressed the view that the City of Tallahassee was obligated to "present evidence pinpointing the need for the particular property, i.e., parcel 18, sought to be condemned."
It is apparent from even a cursory reading of Ball that it adopted the rule enunciated in the Canal Authority cases, i.e., that the condemning authority need only present some evidence showing a reasonable necessity for a taking. It went further, however, to place a gloss upon the Canal Authority cases rule based upon the facts of that case by requiring that the City's evidence pinpoint the need for the particular property. The Court there concluded that the evidence of future need for the particular easement in question was so speculative that it failed to support a finding of necessity. The District Court of Appeal arrived at the same conclusion in the instant case; however, the project herein is entirely different. Here the parcel in question is an integral part of an overall neighborhood development plan which has been approved. The District Court concluded that there was no definitive plan of redevelopment, no plan as to how the land will be used, no plan as to how zoning will be effectuated, no revision by the City of the layout of the streets in the area to be redeveloped, and no program of financing to defray the cost of the redevelopment. The trial court found otherwise, and our review of the record discloses:
(1) a map (Petitioner's Exhibit 4) showing a comprehensive plan of redevelopment;
(2) a map (RP Map No. 3) demonstrating that respondents' land will be used for medium density residential purposes;
(3) a map (RP Map No. 4) depicting not only the current zoning, but proposed zoning changes; and

*991 (4) appellant's RP Map No. 3 reflecting that First Street will be realigned as a designated "major collector."
And as was stated in the Wye case, supra:
"... [I]t is not necessary that a condemnor, representing the state or a political subdivision of the state, have funds on hand, plans and specifications prepared and all other preparations necessary for immediate construction before it can determine the necessity for taking property for a public use. In point of fact, it is the duty of public officials to look to the future and plan for the future... ." (Emphasis supplied) 297 So.2d at 326.
Apart from the factual distinctions in the evidence presented in the instant case as opposed to the Ball case, we are persuaded that the latter placed an unreasonable gloss upon the rule of law enunciated in the Canal Authority cases. To the extent that Ball requires that a condemnor must present evidence pinpointing the need for the particular property sought to be condemned, we recede from that case and reaffirm the rule of law expressed in the Canal Authority cases.
Respecting the query of the District Court as to ostensible discrimination or abuse of discretion by petitioner in selecting respondents' property, we believe this point was reached and decided in Inland Waterway Development Co. v. City of Jacksonville, 38 So.2d 676 (Fla. 1948), where it is stated at page 678:
"From these cases it follows that a broad discretion is vested in those clothed with power to determine what property and how much is necessary to condemn for public purposes and the application will not be denied unless a clear abuse of discretion is shown."
In a project of the magnitude here at issue, it must be obvious that the City must start somewhere within the total area to be redeveloped. Were the City not permitted to exercise its discretion in good faith as to the sequence of the parcels to be condemned, then each landowner would be able to raise the question, "Why not my neighbor?" and thereby effectively frustrate commencement or continuation of the project. Such is not and cannot be the law. See Canal Authority v. Miller, supra; Catholic Burse Endowment Fund v. State Road Dept., 180 So.2d 513 (Fla. 2d DCA 1965).
Accordingly, the petition for writ of certiorari is granted, and the decision of the District Court of Appeal, First District, is quashed, with instructions to remand to the trial court for further proceedings not inconsistent herewith.
It is so ordered.
OVERTON, C.J., and BOYD and ENGLAND, JJ., concur.
HATCHETT, J., dissents.