# BOCA RATON COMMUNITY REDEVELOPMENT AGENCY v BATMASIAN, etc., et al.

## Case No. CL 90-278 AJ

Fifteenth Judicial Circuit, Palm Beach County

May 11, 1990

### APPEARANCES OF COUNSEL

**Arnold M. Weiner, Esquire, Sandra B. Riggs, Esquire** and **H. Adams Weaver, Esquire,** for plaintiff agency.

**Robert A. Sweetapple, Esquire** and **Daniel J. Webster, Esquire,** for defendants, James H. Batmasian, Marta Batmasian and Investments Limited.

**Robert A. Ware, Esquire,** for defendant John L. Rogers d/b/a Rogers Rattan and Wicker.

### OPINION OF THE COURT

MARY E. LUPO, Circuit Judge.

## ORDER GRANTING PETITION FOR ORDER OF TAKING

This case came before the court for hearing on March 29, April 10, 11, 18, 19, and 20, 1990 on the eminent domain petition (D. E. 1) and declaration of taking (D. E. 4) of Boca Raton Community Redevelopment Agency. Arnold M. Weiner, Esq., Sandra B. Riggs, Esq. and H. Adams Weaver, Esq. appeared on behalf of the Agency; Robert A. Sweetapple, Esq. and Daniel J. Webster, Esq. appeared on behalf of James H. Batmasian, Marta Batmasian and Investments Limited; Robert A. Ware, Esq. appeared on behalf of John L. Rogers d/b/a Rogers Rattan and Wicker.

The Agency seeks to condemn a parcel of real property owned by Batmasian and under lease to Rogers. Marta Batmasian, wife of James Batmasian, has no interest in the parcel. Florida National Bank has a mortgage on the parcel and asserts no defense to the taking. Rogers consents to the taking. Batmasian challenges the taking on several grounds:

1. The taking is not for a public purpose but for the private purpose of others including Crocker & Company;

2. The City's finding of blight is invalid for failure to describe legally or clearly the blighted area;

3. The City's findings of blight is invalid and unreasonable, and is not supported by competent, substantial evidence;

4. Even if the City's finding of blight were valid, the area containing the parcel is no longer blighted;

5. The Agency's community redevelopment plan is invalid;

6. The Agency is not proceeding to redevelop in accordance with the community redevelopment plan.

This case was vigorously and brilliantly litigated by all parties both on the facts and on the law. The court received the testimony of Jorge Camejo, Jesse Moore, James Strahan, Charles Siemon, Vicky Newson, Candice Bridgwater, Charles Tavener, William Turnbull, Nanette Gammon, Jamie Synder, and Ralph Warburton. Numerous exhibits were received in evidence and a videotape was published to the court. The court heard argument of counsel and received proposed judgments in support of the parties' positions on April 27, 1990.

A resolution of the factual issues in dispute rests largely upon the court's evaluation of the credibility of the witnesses. In weighing the credibility of a witness, and the weight to be given his/her testimony, the court must consider the criteria outlined in the standard jury

instruction: the demeanor of the witness while testifying; the frankness or lack of frankness of the witness; the intelligence of the witness; the interest, if any, the witness has in the outcome of the case; the means and opportunity the witness had to know the facts about which he/she testified; the ability of the witness to remember the matters about which he/she testified; and the reasonableness of the testimony of the witness, considered in the light of all the evidence in the case and in the light of experience and common sense.

In determining the credibility of expert testimony, the court may accept the opinion testimony, reject it, or give it the weight the court thinks it deserves, considering the knowledge, skill, experience, training and education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case.

The court makes the following findings of fact:

1. The Agency was validly created under the Community Redevelopment Act, Chapter 163, Part III, Florida Statutes (1979).

2. The petition contains a correct legal description of the property in question.

3. The property is the last parcel sought by the Agency for the development of Mizner Park, a community redevelopment project of thirty acres in downtown Boca Raton.

4. Mizner Park is a mixed-use development consisting of private residential, commercial, and retail uses along with parks, parking, public open space, and potential sites for not-for-profit cultural use.

5. The Agency presented competent, substantial evidence that blight existed in 1980 in the area containing the Batmasian parcel.

6. The expert testimony of Charles Siemon is persuasive that blight existed in downtown Boca Raton in 1980. The testimony of Jesse Moore was straightforward and worthy of belief.

7. There was competent, substantial evidence to support the finding of blight by the City Council.

8. Justification for the creation of Mizner Park is amply supported in the evidence.

9. The Agency, City Council, and voters of Boca Raton have determined that the creation of Mizner Park is necessary for the elimination of blight in downtown Boca Raton. The Batmasian parcel adjoins the Boca Raton Mall site. Acquisitions of the parcel is essential to fulfill the concept of Mizner Park and the contemplated extension of First Avenue.

10. Batmasian's assertions against the Agency of bad faith and misconduct were unsupported by the greater weight of the evidence.

11. Batmasian failed to prove his affirmative defenses by a greater weight of the evidence.

12. The expert testimony of Ralph Warburton, an architect with impressive credentials and experience, lacked credibility for numerous reasons, and merits little weight from the court.

13. The good faith estimate of the value of the property based upon a valid appraisal is $490,000.

The court makes the following conclusions of law:

1. The Florida Legislature has expressed its position on slum and blighted areas in its finding that both constitute a serious and growing menace, injurious to the public health, safety, morals, and welfare of the residents of the state.

[T]he existence of such areas contributes substantially and increasingly to the spread of disease and crime, constitutes an economic and social liability imposing onerous burdens which decrease the tax base and reduce tax revenues, substantially impairs or arrests sound growth . . . and that the prevention and elimination of slums and blight is a matter of state policy and state concern. . .Section 163.335(1), Florida Statutes (1989).

2. Under Section 163.355, prior to any municipality exercising its power of eminent domain, the governing body of the municipality is required to adopt a resolution finding that a blighted area exists and that the redevelopment of that area is necessary in the interest of the public health, safety, morals or welfare.

3. "Blighted area" means an area in which there are a substantial number of slum, deteriorated, or deteriorating structures and conditions which endanger life or property by fire or other causes or one or more of the following factors which substantially impairs or arrests the sound growth of a county or municipality and is a menace to public health, safety, morals, or welfare in its present condition and use:

(a) Predominance of defective or inadequate street layout;

(b) Faulty lot layout in relation to size, adequacy, accessibility or usefulness;

(c) Unsanitary or unsafe conditions;

(d) Deterioration of site or other improvements;

228

(e) Tax or special assessment delinquency exceeding the fair value of the land; and

(f) Diversity of ownership or defective or unusual conditions of title which prevents the free alienability of land within the deteriorated or hazardous area. Section 163.340(8), Florida Statutes (1979).

4. It is well-established in Florida law that the power of eminent domain is one of the most harsh proceedings known. When the sovereign delegates its power of eminent domain to an agency, strict construction must be given against the agency asserting the power.

5. In this case, the burden is on the agency to establish a public purpose and reasonable necessity for the taking. *Baycol, Inc. v Downtown Development Authority,* 315 SO.2d 451 (Fla. 1975); *Peavy-Wilson Lumber Co. v Brevard County,* 31 So.2d 483 (Fla. 1947).

6. The parties disagree on the standard that the court should apply in reviewing the 1980 resolution declaring blight that was adopted by the City Council. In analyzing the proof necessary to establish public purpose or necessity, Batmasian argues that the Agency has the burden to prove by competent and substantial evidence that Batmasian's parcel is needed for the redevelopment of a blighted area. *City of Jacksonville v Moman,* 290 So.2d 105 (Fla. 1st DCA 1974). "Even in this enlightened era of 'big brother knows best,' the right of an individual to own and acquire property must be safe-guarded against an arbitrary taking by the sovereign." *Id.* at 107.

The Agency argues that the court must apply the same standard of review for municipal ordinances that it uses when evaluating federal or state statutes.

Subject to specific constitutional limitations, when the legislature has spoke, the public interest has been declared in terms well-nigh conclusive. In such cases the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation. . .The role of the judiciary in determining whether that power is being exercised for a public purpose is an extremely narrow one. *Berman v Parker,* 348 U.S. 26, 32 (Fla. 1954).

The court cannot substitute its judgment for a legislature's judgment on public use unless the use is without reasonable foundation. *Hawaii Housing Authority v Midkiff,* 467 U.S. 229 (Hawaii 1984).

Both the Agency and Batmasian rely on *State v Miami Beach Redevelopment Agency,* 392 So.2d 875 (Fla. 1980).

The standard for determining the question of public purpose is the

same for use of eminent domain as it is for use of public funds and the sale of bonds. Batmasian relies on the following dicta to support his position:

Plainly, the trial court resolved conflicts in the evidence in favor of the redevelopment plan. The court's findings are adequately supported by competent, substantial evidence, and must be affirmed. *Id.,* at 893.

The Agency cites the following language:

The legislature has determined that projects using eminent domain to clear blighted areas and providing for the ultimate disposition of substantial portions of the acquired properties for use by private concerns in profit-making activities serve a public purpose. This determination, while not conclusive, is presumed valid and should be upheld unless it is arbitrary or unfounded—less it is so clearly erroneous as to be beyond the power of the legislature. *Id.,* at 886.

The Agency argues that it has met its burden of proof on the petition for taking:

"(S)uch authority in order to meets its burden, must put on some evidence of reasonable necessity for the taking. Once this is shown, however, the landowner must then either concede the existence of a necessity or be prepared to show bad faith or abuse of discretion as an affirmative defense. *City of Jacksonville v Griffin,* 346 So.2d 988, 990 (Fla. 1977)."

7. The court need not resolve the legal issue in dispute because the Agency has presented competent, substantial evidence to support the City Council's finding that blight existed in 1980 in downtown Boca Raton. The 1980 resolution of the City Council is, therefore, valid.

8. The Agency has repeatedly objected to the relevancy of evidence offered by Batmasian. Batmasian has insisted throughout the hearing that the taking is not in the public purpose, but to the benefit of Crocker & Company. It is well-established in the law, however, that eventual private ownership of condemned land with revenues derived from bonds is constitutional, and that use of eminent domain for acquisition and clearance, and substantial private and commercial uses after redevelopment, is in furtherance of a public purpose. *Holloway v Lakeland Downtown Development Authority,* 417 So.2d 963 (Fla. 1982). The transferring of property taken by eminent domain to private parties, moreover, does not invalidate the public use finding of the legislature. *Hawaii Housing Authority, supra.*

9. Based upon the evidence produced at trial, the prerequisites for finding of necessity pursuant to Section 163.355 exist.

230

10. The Agency has the authority to exercise the power of eminent domain.

11. A public purpose exists for acquisition of the Batmasian parcel.

12. Acquisition of the Batmasian parcel is necessary in order to accomplish the public purpose.

13. The Agency has demonstrated a reasonable necessity for the proposed taking, and has not abused its discretion in seeking acquisition of the Batmasian parcel.

The court hereby ORDERS AND ADJUDGES as follows:

1. The Agency shall deposit $490,000 for the Batmasian parcel within twenty days of the date of this order. Counsel shall furnish an affidavit to the court and all respondents that the Agency has complied with this provision of the order.

2. The Agency has right to immediate possession. Upon receipt of the affidavit of counsel, the respondents shall surrender the parcel to the Agency immediately.

3. The petition for order of taking is granted.

4. The court retains jurisdiction to enter further orders necessary and appropriate.

DONE AND ORDERED this 11th day of May, 1990 in chambers at West Palm Beach, Palm Beach County, Florida.